REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 495

September Term, 2012

_____


ANDREW LINDSEY

v.

STATE OF MARYLAND, ET AL.

_____



Eyler, Deborah S.,
Graeff,
Hotten,

                              JJ.

_____

Opinion by Eyler, Deborah S., J.

_____


Filed: August 27, 2014

Andrew Lindsey, the appellant, was shot and seriously injured in the course of an attempted robbery perpetrated by Shyquille Griffin and Antonio Whitely. Both men were charged with attempted first-degree murder and related offenses in the Circuit Court for Prince George's County. Griffin entered into a written plea agreement, which was conditioned upon his cooperating with the State in the case against Whitely. The plea agreement made no reference to restitution. The circuit court accepted Griffin's plea.

At Griffin's sentencing hearing, Lindsey for the first time made a request for restitution. The court denied it on the ground that ordering Griffin to pay restitution would violate the terms of the plea agreement. The court proceeded to sentence Griffin. Thirty days thereafter, Lindsey filed a motion under Md. Code (2001, 2008 Repl. Vol., 2011 Supp.), section 11-103(e)(2) of the Criminal Procedure Article ("Cr. P."),[1] alleging that his right to restitution under section 11-603 had been improperly denied and asking the court to enter a judgment of restitution.[2] After a hearing, the court denied the motion on the same ground it had denied restitution at the sentencing hearing and on the additional ground that ordering Griffin to pay restitution would be an impermissible increase in his sentence.

Lindsey filed an application for leave to appeal, which was granted. Griffin and the State of Maryland both are appellees. Griffin has moved to dismiss the appeal for lack of jurisdiction.

---

[1] Unless otherwise specified, all statutory references are to the Criminal Procedure Article.

[2] As we shall explain, section 11-103(e)(2) was amended after the time relevant to this case. The language in subsection (e)(2) remains, however, although it now appears at subsection (e)(4).

For the reasons to follow, we shall deny the motion to dismiss and shall hold that the circuit court abused its discretion in denying Lindsey's motion. We shall vacate its order and remand the matter for further proceedings not inconsistent with this opinion.

**FACTS AND PROCEEDINGS**

The attempted robbery took place on May 26, 2011. Lindsey was 22 years old, was working as a barber, and, apparently, also was involved in the marijuana drug trade. That day, Griffin, an old friend of Lindsey, arranged for Lindsey to sell seven grams of marijuana to Whitely, an acquaintance of Griffin. The three men met at a gas station parking lot in Upper Marlboro, Lindsey in his car and Griffin and Whitely in Griffin's car. Griffin walked over to Lindsey's car, and Lindsey gave him the marijuana. Griffin took it to Whitely, who weighed it, and concluded that it was short of seven grams. Griffin returned to Lindsey's car and asked "what else he had in the car." Whitely then approached Lindsey's car, pointed a handgun at Lindsey, and demanded "everything that [Lindsey] had in the vehicle." When Lindsey tried to drive away, Whitely fired shots in his direction, striking him in the left arm.

Lindsey managed to drive to his father's house and from there he was transported by ambulance to the hospital. The bones in his left arm were shattered by the bullet. He underwent bone fusion surgery for which he was financially responsible, because he had no health insurance. Lindsey is left-handed. Due to his injuries he no longer can work as a barber.

On June 23, 2011, a grand jury in the Circuit Court for Prince George's County indicted Griffin for attempted first-degree murder, attempted second-degree murder, robbery

2

with a deadly weapon, attempted robbery, first and second-degree assault, use of a handgun in the commission of a crime of violence, two counts of carrying a handgun, two counts of transporting a handgun on a roadway, possession of a regulated firearm by a person under the age of 21, attempted theft, and conspiracy to commit murder. The grand jury also indicted Whitely for a multitude of crimes arising out of Lindsey's shooting.

On December 16, 2011, Griffin appeared in court and entered a conditional ABA plea.[3] At a bench conference, the terms of a written "Proffer Agreement" were placed on the record. Under the agreement, Griffin promised to give truthful information about his own "criminal liability" and that of others and to testify truthfully in the case against Whitely. The "potential benefit" to Griffin would be the State's agreement to a guilty plea to one count of attempted robbery, which carries a maximum sentence of 15 years, with a "sentencing cap of 15 years suspend all but 18 months[,]" with all other counts to be *nol prossed*. Defense counsel would be free to argue for less time. Griffin would receive "two points for permanent injury [to Lindsey], but zero points for weapon usage" in the presentencing investigation. The "Proffer Agreement" said nothing about probation, conditions of probation, or restitution. It contained language stating it was "the full and complete agreement of the parties."

---

[3]An ABA plea is a pattern guilty plea based upon standards developed by the American Bar Association. It involves "an agreement by the sentencing judge, the defendant, and the prosecutor as to what the maximum sentence will be if the plea is accepted." *Gross v. State*, 186 Md. App. 320, 322 n.1 (2009).

The court questioned Griffin about his age, educational level, ability to read and write, and whether he had read and understood the "Proffer Agreement." As to the latter, Griffin confirmed that he had done so and was knowingly and voluntarily entering into the plea agreement. After that, the prosecutor recounted the evidence against Griffin and the court announced that it was "satisfied there [was] a factual basis to accept the plea." Sentencing was scheduled for January 13, 2012.

The record does not reflect whether Lindsey or any representative of his was present in the courtroom on December 16, 2011, when the plea agreement was accepted. The record also does not reflect whether Lindsey or his family were given notice of that hearing.[4]

On January 13, 2012, the parties returned to court for the sentencing hearing. Also present were Lindsey's mother, Jamillia Williams (who was acting as Lindsey's representative);[5] his father; and his stepfather. None of them were represented by counsel. By then, Whitely had pleaded guilty to first-degree assault and use of a handgun in a crime

---

[4]Pursuant to section 11-104(c), within ten days of the filing of the indictment against Griffin, the State was required to send Lindsey notice of his "rights . . . under State law" and a "notification request form" which he could complete and return. If Lindsey had completed the "notification request form," the State also would have been obligated to give him (or his designated representative) notice of any court proceeding and, if practicable, prior notice of the terms of any plea agreement reached. The record is silent as to whether Lindsey filed a notice request form in this case. Lindsey does not argue that his notice rights were denied.

In his brief, Lindsey complains that the plea agreement proceedings on December 16, 2011, all took place at the bench and could not be heard by anyone present in the courtroom. This suggests that Lindsey or a representative of his was there. Nevertheless, we cannot tell from the record if that was so. Whether Lindsey or a representative was present in the courtroom that day does not affect our analysis of the issues, however.

[5]A "member of [a] victim's immediate family" may act as his or her representative in court pursuant to section 11-401.

4

of violence and was awaiting sentencing. The prosecutor and defense counsel agreed that Griffin had cooperated as he had promised to do and that his cooperation had been instrumental in bringing about Whitely's guilty plea.

At a bench conference, the prosecutor informed the court that, sometime after the December 16, 2011 plea hearing, Lindsey had asked for $9,700 in restitution. The prosecutor explained, "[W]hile there is nothing in the plea agreement about restitution, the victim understands the statute, has the absolute right to ask for that. The victim is asking for that. The defense, obviously, is exercising their right not to agree to pay that . . . ."

Defense counsel argued that Griffin's plea agreement had been accepted by the court subject to conditions that had been fulfilled, and that the plea agreement as accepted did not include any obligation to pay restitution. He emphasized that the written "Proffer Agreement" made no mention of restitution and contained the "full and complete agreement of the parties" language. Defense counsel took the position that the State *and* Lindsey were precluded by the terms of the plea agreement from obtaining restitution from Griffin.

The sentencing judge called Williams to the bench. He told her that, because Griffin had entered into a plea agreement with the State that did not include restitution, the court could not order him to pay restitution. The court advised Williams that Lindsey could file a civil action against Griffin for the sum she was seeking in restitution. Thereafter, the court heard argument on sentencing. Williams gave a victim impact statement.

Consistent with the plea agreement, the court sentenced Griffin to a term of 15 years' incarceration, with all but 18 months suspended. It ordered a three-year period of supervised

5

probation. Using a court form, it imposed "All Standard Conditions" of probation, with some (including restitution) not checked off. Griffin was given credit for 231 days time served. The State entered a *nolle prosequi* on each of the remaining charges.

On February 13, 2012, Lindsey, now represented by counsel, filed a motion under section 11-103(e)(2), asserting that the circuit court had erred in denying his request for restitution because its legal conclusion that the terms of the plea agreement precluded it from ordering Griffin to pay restitution was incorrect. (For ease of discussion we shall refer to this motion as the "motion for reconsideration.") Lindsey pointed out that in *Lafontant v. State*, 197 Md. App. 217, *cert. denied,* 419 Md. 647 (2011), this Court held that a circuit court did not violate the terms of the defendant's plea agreement, which did not include restitution, by sentencing him to a term of incarceration, a portion of which was suspended, in keeping with the plea agreement; ordering five years supervised probation; and including the payment of restitution as a condition of probation. Lindsey attached to his motion seven medical bills, totaling $10,762.75.[6]

On March 7, 2012, the court held a hearing on Lindsey's motion for reconsideration. Lindsey's lawyer argued that Lindsey had a right to restitution under section 11-603(b), so long as he produced competent evidence of his medical expenses, and that, under section 11-

---

[6]As mentioned, at the sentencing hearing, the prosecutor represented to the court that Lindsey was seeking $9,700 in restitution. When Lindsey filed his motion for reconsideration, he requested $10,762.75, however. He attached as exhibits bills dated between May 26, 2011 and September 12, 2011, totaling $10,762.75. It is unclear why his initial request did not reflect this total.

615, his medical bills were competent evidence of those expenses. Griffin's lawyer responded that the plea agreement as approved by the court on December 16, 2011, before Lindsey asked for restitution, was binding on the parties and capped Griffin's sentence. He maintained that the court could not modify Griffin's sentence to include restitution, as that would be an increase in the penalty agreed to by the parties, accepted by the court, and already imposed.[7] To that, Lindsey's counsel pointed out that ordering restitution as a condition of probation would be permissible because "[t]he terms of probation can be changed at any time."

The court denied Lindsey's motion for reconsideration on two grounds: ordering Griffin to pay restitution would be "contrary to the contract," *i.e.*, the plea agreement, and ordering Griffin to pay restitution would be an improper increase in his sentence.

On April 5, 2012, Lindsey filed an application for leave to appeal. The application was granted on July 8, 2013. Lindsey poses two questions, which we have rephrased:

1.  Did the circuit court err by denying his restitution request on the ground that it was precluded by the plea agreement?

2.  Did the circuit court abuse its discretion by denying his motion for reconsideration?

## DISCUSSION

### I.

---

[7] Counsel for Griffin also informed the court that Whitely recently had been sentenced to a term of 20 years' imprisonment, with all but 15 years suspended, and payment of $10,762.75 in restitution to Lindsey.

## Applicable Law

Respectively, Article 47(a) and (b) of the Maryland Declaration of Rights guarantee crime victims the right to "be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process" and to be "informed of the rights established in this Article and, upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding." In furtherance of these guarantees, Title 11 of the Criminal Procedure Article confers certain rights upon crime victims. In particular, Subtitle 6, Part I of that title grants victims the right to restitution.

A "judgment of restitution" is "a direct order for payment of restitution or an order for payment of restitution that is a condition of probation in an order of probation." Cr. P. § 11-601(g). As relevant, section 11-603, "Restitution determination," allows a court to enter a judgment of restitution directing the defendant to "make restitution in addition to any other penalty" for the commission of the crime if the victim suffered "actual medical, dental, hospital, counseling, funeral, or burial expenses or losses." Cr. P. § 11-603(a)(2)(i). A crime victim is "presumed to have a right to restitution" if "1) the victim or the State requests restitution; and 2) the court is presented with competent evidence of any item listed in [section 11-603 (a)]." Cr. P. § 11-603(b). "[A] written statement or bill for medical, dental, hospital, counseling, funeral, or burial expenses is legally sufficient evidence of the amount, fairness, and reasonableness of the charges and the necessity of the services or materials provided." Cr. P. § 11-615(a). "A court need not issue a judgment of restitution," however, if it finds "that the restitution obligor does not have the ability to pay the judgment of

8

restitution" or "that there are extenuating circumstances that make a judgment of restitution inappropriate." Cr. P. § 11-605(a)(1) and (2).  If a court declines to order restitution under section 11-601 *et seq.*, it must state its reasons on the record.  Cr. P. § 11-605(b).

Under section 11-607, when a judgment of restitution has been entered under section 11-603, "compliance with the judgment of restitution: (i) may be a requirement in the judgment of conviction . . . ; [and] (iii) if probation is ordered, shall be a condition of probation: 1. In addition to the sentence or disposition . . . ." Cr. P. § 11-607(a).

Section 11-103 governs appeals by crime victims from rulings denying their rights in the criminal prosecutions of their perpetrators.  In 2012 -- the year pertinent to this case -- that statute granted limited appeal rights, all by application for leave to appeal in this Court. Specifically, the statute gave the victim of a violent crime the right to file an application for leave to appeal, "from an interlocutory or final order that denies or fails to consider" certain enumerated statutory rights, including the right to restitution under section 11-603.  Cr. P. § 11-103(b).[8]  In addition, section 11-103(e) gave a crime victim the right to file in the lower court a motion for relief challenging a restitution denial decision:

> (e) *Ensurance of victim's rights; restitution.* – (1) In any court proceeding involving a crime against a victim, the court shall ensure that the victim is in fact afforded the rights provided to victims by law.

---

[8]In 2013, these rights were expanded to permit a victim of a crime (violent or non-violent) to note a direct appeal to this Court from a final order affecting any of the enumerated rights and to file an application for leave to appeal from an interlocutory order affecting any of the enumerated rights.  *See* Acts of 2013, ch. 43, § 5 and ch. 363, § 1.  The General Assembly specifically provided that the amendments to the statute "shall be construed to apply only prospectively."  *Id.* at ch. 363, § 2.

(2) (i) A victim who alleges that the victim's right to restitution under § 11-603 of this title was not considered or was improperly denied may file a motion requesting relief within 30 days of the denial or alleged failure to consider.

(ii) If the court finds that the victim's right to restitution under § 11-603 of this title was not considered or was improperly denied, the court may enter a judgment of restitution.[9]

(As noted, we are referring to the motion requesting relief under section 11-103(e)(2) as a "motion for reconsideration.")

Finally, Rule 8-204 governs applications for leave to appeal in this Court. Ordinarily, an application must be filed "within 30 days after entry of the judgment or order from which the appeal is sought." Md. Rule 8-204(b)(2)(A). An application for leave to appeal from an interlocutory order, pursuant to section 11-103, "may be filed at the time the victim's right is actually being denied or within 10 days after the request is made on behalf of the victim, whether or not the court has ruled on the request." Md. Rule 8-204(b)(2)(B).

## II.

## **Motion to Dismiss**

Griffin has moved to dismiss this appeal on the ground that the Court lacks jurisdiction over it. His argument is two-pronged. First, the judgment of conviction entered against him on January 13, 2012, was a final judgment that embodied the court's denial of Lindsey's request for restitution. Lindsey did not file an application for leave to appeal

---

[9]Subsection 11-103(e) also was amended by the same legislation. We shall discuss these changes, *infra*. As mentioned above, the language we have quoted has not changed, but now appears in subsections (e)(4)(i) and (ii).

10

within 30 days of the entry of that judgment, however, so we do not have jurisdiction to consider whether the court erred in denying restitution at the sentencing hearing. Second, the court's order denying Lindsey's motion for reconsideration is not an appealable order. Therefore, even though Lindsey filed an application for leave to appeal within 30 days of the entry of that order, this Court does not have jurisdiction to consider a challenge to it.

Lindsey responds that, because he timely filed a motion for reconsideration under section 11-103(e)(2), 30 days after entry of the judgment of conviction, the judgment of conviction was interlocutory, not final; and, although section 11-103(b) grants a victim of a violent crime the right to file an application for leave to appeal from an interlocutory order, the victim need not do so. The victim can opt to file an application for leave to appeal once a final judgment has been entered. Lindsey maintains that the first time there was a final judgment in the case against Griffin was March 7, 2012, when the court entered its order denying his (Lindsey's) motion for reconsideration. Because he timely filed his application for leave to appeal within 30 days of that date, this Court has jurisdiction to decide whether the court erred in denying restitution at the sentencing hearing and in denying the motion for reconsideration.

We agree with the first prong of Griffin's argument. The circuit court's January 13, 2012 judgment of conviction was a final judgment when it was entered. Griffin pleaded guilty to one count, the court sentenced him on that count, and the State *nol prossed* the remaining counts. *See Hoile v. State*, 404 Md. 591, 612 (2008) ("'When sentence is

11

pronounced or imposed, there is a final judgment for purposes of appeal.'") (quoting *State v. Sayre*, 314 Md. 559, 565 (1989), *superseded by Rule change on other grounds as stated in Greco v. State*, 347 Md. 423, 433 n.4 (1997)). The court's ruling at the sentencing hearing denying Lindsey's request for restitution was embodied in the judgment of conviction, in that no restitution judgment was entered. Therefore, the 30-day period for Lindsey to file an application for leave to appeal under section 11-103(b) and Rule 8-204(b)(2)(A) was triggered on January 13, 2012. Moreover, there is no tolling provision in Rule 8-204.[10] So, even though Lindsey had the right to file a motion for reconsideration under section 11-103(e)(2), within 30 days of the court's denial of his restitution request, his doing so did not toll the 30-day period in which to file an application for leave to appeal the January 13, 2012 final judgment. Griffin is correct that because Lindsey did not file an application for leave to appeal within 30 days of the entry of the judgment of conviction against Griffin, this Court lacks jurisdiction to review the denial of restitution that was embodied in that judgment.

We disagree with the second prong of Griffin's argument, however. The details of that argument are as follows. Ordinarily, crime victims have no right to appeal from the

---

[10] For direct appeals, the timely filing of certain motions will toll the running of the period for a party to note an appeal. *See* Md. Rule 8-202(b) (in a criminal action, if the defendant files a motion for a new trial within ten days of the verdict, a notice of appeal must be filed within 30 days after the later of the entry of the judgment or the withdrawal of the motion or entry of an order denying the motion); Md. Rule 8-202(c) (in a civil action, if a party files a motion for a new trial, to alter or amend, or to revise within ten days of the judgment, the notice of appeal must be filed within 30 days after the denial of the motion for a new trial or the disposition of the motions to alter, amend, or revise).

12

judgments or orders entered in the criminal cases against their perpetrators. *See Lopez-Sanchez*, 388 Md. 214 (2005), *superseded by statute as stated in Hoile*, 404 Md. at 605. The legislature has conferred certain appeal rights upon victims of violent crimes, however; but whatever appeal rights victims have by statute are the only appeal rights they have. As discussed above, those appeal rights are set forth in section 11-103(b), which states, very specifically, that a victim of a violent crime may file an application for leave to appeal from an interlocutory or final order

> that denies or fails to consider a right secured to the victim by § 4-202 of this article, § 11-102, § 11-104, § 11-302, § 11-402, § 11-403, § 11-404, or § 11-603 of this title, § 3-8A-06, § 3-8A-13, or § 3-8A-19 of the Courts Article, or § 6-112 of the Correctional Services Article.

Griffin maintains that, because section 11-103(e)(2) is not listed in section 11-103(b) as one of the rights secured to a victim that can be challenged on appeal for denial or failure to consider, an order entered under section 11-103(e)(2) is not appealable. This argument overlooks the central purpose of a section 11-103(e)(2) motion for reconsideration, which is to protect a victim's right to restitution. The motion for reconsideration is the vehicle by which a victim can challenge, in the same court, the court's prior failure to consider or improper denial of a request for restitution. Thus, the right secured by section 11-103(e)(2) is the right of restitution under section 11-603, which is one of the enumerated rights in section 11-103(b). As the denial of Lindsey's motion for reconsideration under section 11-103(e)(2) was a denial of his right to restitution under section 11-603, the court's order is subject to appellate challenge by application for leave to appeal. Accordingly, this Court has

13

jurisdiction to review the circuit court's order denying Lindsey's section 11-103(e)(2) motion.

We note that it makes no difference in our consideration of the issues on appeal that Lindsey failed to file a timely application for leave to appeal from the judgment of conviction. In its ruling on the motion for reconsideration, the court revisited the ground on which it had denied the restitution request at sentencing -- that the plea agreement precluded the court from ordering restitution -- and concluded that that decision had been correct. It ruled, in addition, that it could not order restitution because that would be an increase in Griffin's sentence. A motion under section 11-103(e)(2) may seek, as this one did, a reconsideration by the court of its decision to deny restitution. Ordinarily, the denial of a motion seeking reconsideration is reviewed on appeal for abuse of discretion. *See U.S. Life Ins. Co. v. Wilson*, 198 Md. App. 452, 464 (2011). An error of law is an abuse of discretion. *Bass v. State*, 206 Md. App. 1, 11 (2012). Both bases for the court's ruling were issues of law. Thus, if the court erred in its decision on either of them, it abused its discretion.

**III.**

### Did the Terms of the Plea Agreement Preclude the Circuit Court from Ordering Restitution?

Lindsey asserts that, as the victim of a violent crime who sought restitution and provided proof in support of his request, he had a presumptive right to restitution under section 11-603(b), and that the State could not waive or forfeit his right to restitution by entering into a plea agreement with Griffin. He points out that in *Lafontant* this Court held

14

that the sentencing court did not violate the defendant's plea agreement, which did not include a requirement to pay restitution, by including restitution as a condition of probation.

Griffin and the State recognize that Lindsey had a right to restitution independent of the State's right to restitution, and that the State could not waive or forfeit Lindsey's right for him. They argue, however, that Lindsey himself "forfeit[ed]" his restitution right by not seeking restitution *before* the court accepted the plea agreement. They assert that *Lafontant* is distinguishable because there the plea agreement was oral and "vague," whereas the "Proffer Agreement" in this case was written, specific, unambiguous, made no mention of restitution, and included a "complete agreement of the parties" clause.

**(a)**

As mentioned, a criminal defendant may be ordered to pay restitution to the crime victim as a sentence for the crime, as a condition of any period of probation that is ordered, or both. *See* Cr. P. § 11-601(g) ("judgment of restitution" is "a direct order for payment of restitution or an order for payment of restitution that is a condition of probation in an order of probation."). If a judgment of restitution is entered as a sentence, under section 11-603, compliance may be a requirement of the judgment; and if probation is ordered after entry of judgment, compliance shall be a condition of probation in addition to a sentence or disposition. Cr. P. § 11-607(a)(1). When restitution has been ordered as a sentence and the defendant, having the ability to pay, fails to do so, the court may use its contempt powers to

15

punish the defendant. *See* Cr. P. § 11-607(c)(2); *Smitley v. State*, 61 Md. App. 477, 483 (1985).

Sections 6-221 and 6-222 give a court entering a judgment of conviction broad powers to order probation. Section 6-221 states, simply, that, "[o]n entering a judgment of conviction, the court may suspend the imposition or execution of sentence and place the defendant on probation on the conditions that the court considers proper." Further, section 6-222 authorizes a court to "impose a sentence for a specified time and provide that a lesser time be served in confinement;[]suspend the remainder of the sentence; and [] order probation" for a period of time as elaborated upon in that statute. The latter is known as a "split sentence." *Moats v. Scott*, 358 Md. 593, 595 (2000). If a court imposes a "split sentence," *i.e.*, a sentence for a specified period of time with part of the time being suspended, there must be a period of probation attached to the suspended part of the sentence. *Cathcart v. State*, 397 Md. 320, 327 (2007). Without a period of probation, the sentence effectively would be for the unsuspended time only. *Id.* at 329.

"Probation is by definition conditional," that is, it is imposed subject to conditions with which the defendant must comply. *Gibson v. State*, 328 Md. 687, 689 (1992). When a defendant violates a condition of probation, the court may strike the probationary period and sentence the defendant to serve all or part of the original sentence of imprisonment. Cr. P. § 6-224(b)(1)(i). Alternatively, the court may suspend all or part of that sentence upon

16

further probation. *Id*. at (b)(2). Also, if the court did not impose a sentence originally, the court may impose any sentence permitted by law. *Id*. at (b)(1)(ii).

A plea agreement is in the nature of a contract between the defendant and the State. *Tweedy v. State*, 380 Md. 475, 482 (2004); *Hillard v. State*, 141 Md. App. 199, 207 (2001); *Ogonowski v. State*, 87 Md. App. 173, 182-83 (1991). Cases that have addressed whether a term of a plea agreement has been breached -- which necessarily requires an assessment of the meaning of the plea agreement -- have applied contract principles. *See, e.g., Cuffley v. State*, 416 Md. 568, 579-80 (2010); *Carlini v. State*, 215 Md. App. 415, 446 (2013).

In *Rankin v. State*, 174 Md. App. 404 (2007), we explained:

> "[S]everal courts have noted that the terms of [a] plea agreement are to be construed according to what [the] defendant reasonably understood when the plea was entered." *Tweedy*, 380 Md. at 482. In addition, "[t]he words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed." *Ridenour v. State*, 142 Md. App. 1, 6 (2001). We construe the agreement as a whole, to give effect to all parts of the contract. *Owens-Illinois, Inc. v. Cook*, 386 Md. 468, 497 (2005). In determining a defendant's reasonable understanding of the agreement at the time he entered into it, "we consider terms implied by the plea agreement as well as those expressly provided." *United States v. Bunner*, 134 F.3d 1000, 1003 (10th Cir. 1998). *See also People v. Manzanares*, 85 P.3d 604, 608 (Colo. App. 2003) (stating that "terms of a plea agreement may be implied as well as expressed plainly on the agreement's face.") (citation omitted); *State v. Brooke*, 134 Idaho 187 (2000).

*Id*. at 409 (some internal citations omitted).

The meaning of a plea agreement, like the meaning of any contract, is a question of law subject to *de novo* review. *Solorzano v. State*, 397 Md. 661, 668 (2007).

**(b)**

17

We begin our analysis with the two cases most relevant to the question whether the circuit court erred as a matter of law in construing Griffin's plea agreement to preclude the court from ordering Griffin to pay restitution as a condition of probation: *Rankin v. State*, 174 Md. App. 404, and *Lafontant v. State,* 197 Md. App. 217.

In *Rankin*, the defendant appealed from an order denying his motion to correct illegal sentence. He had entered into a plea agreement to one count of conspiracy to commit a second degree sex offense. When the plea agreement was presented to the court, the prosecutor said, "'The only limitation on sentence is the Court had bound itself to an active cap of no more than three years.'" 174 Md. App. at 406. The judge explained the terms of the plea agreement to the defendant:

> "Okay. I'm told that the agreement is if that plea is accepted that the State will dismiss all the other counts at the time of sentencing. In addition, the active portion of the sentence, that's the portion that's not suspended, cannot exceed three years. The Court could, however, as part of the sentence, impose the sentence where the suspended portion exceeds three years."

*Id*. The defendant said he understood, and the court accepted the plea agreement. A written "Plea/Sentence Agreement" was filed that day. It recounted that the defendant would plead guilty to conspiracy to commit second degree sex offense; the State would dismiss the remaining charges; and the court would "impose an active cap of no more than 3 years. Court may impose additional suspended time." *Id*. at 407. The writing further provided, "There is no other sentencing limitation except that provided by law." *Id*.

When sentencing took place two months later, the court warned the defendant that if he violated his probation he would "'run the risk of doing substantially all the back up time. Do you understand that?'" *Id*. at 406. The defendant responded that he did. In accordance with the plea agreement, the court imposed a sentence of 20 years, all but three years suspended, followed by five years' probation. It advised the defendant of the conditions of his probation and issued an order stating those conditions, which the defendant's lawyer said he was going to review with the defendant right then.

A little more than a year after the defendant was released from prison, he committed a new offense, which was a violation of one of the conditions of his probation. At the violation hearing, the defendant admitted to committing the new offense. The court ordered him to serve ten years of the previously suspended portion of his sentence.

About five years later, the defendant filed a motion to correct illegal sentence, arguing that the plea agreement as accepted by the court before sentencing did not include probation and therefore the court lacked authority to order probation (and conditions thereto); to find him in violation of probation; and to order him to serve a portion of the suspended time as a consequence of the probation violation. The court denied the motion.

This Court affirmed. We explained that because the court imposed a split sentence -- *i.e.*, a term of incarceration part of which was suspended -- a period of probation was implicit in the plea agreement, "because a period of probation must be attached to a suspended sentence." 174 Md. App. at 411. We held that "the right to impose a period of probation is

included in any plea agreement that provides for a suspended sentence. If we were to hold otherwise, the imposition of a suspended sentence would be meaningless." *Id*. at 411-12 (footnote omitted). We further concluded that a reasonable person in the defendant's position would have understood the plea agreement to include probation, given the court's admonition at the time of sentencing. Moreover, neither the defendant nor his counsel objected to the court's ordering a period of probation, even though the plea agreement as accepted by the court and reduced to writing said nothing about probation.

In *Lafontant,* 197 Md. App. at 217, this Court applied the principles established in *Rankin* in the context of restitution ordered as a condition of probation in a plea agreement. In that case, the defendant was charged with vehicular manslaughter and related offenses. The deceased victim's grandmother, acting as her representative, requested and received notice of all proceedings. The defendant entered into an oral plea agreement with the State. At the plea hearing, which the victim's representative attended, the terms of the plea agreement were placed on the record. The defendant agreed to plead guilty to one count of vehicular manslaughter and the State agreed to request "'no more than four years active incarceration,'" without prejudice to defense counsel's right to argue for less time. *Id*. at 223. The court accepted the plea agreement. The victim's representative did not speak at the plea hearing.

On the day of sentencing, the victim's representative filed a written request for restitution of approximately $12,000. She attached medical bills and funeral and burial

20

expenses in support. Defense counsel opposed the request, arguing that restitution was not part of the plea agreement and therefore could not be ordered. The court gave the defendant the opportunity to withdraw his plea, which he declined to do. The parties consented to the court's delaying a ruling on the restitution request "to allow defense counsel to discuss it with his client, and to permit the parties and counsel for the victims' representative to supply the court with authority for and against the request." *Id*. at 224. The court imposed a sentence of ten years' incarceration, all but four years suspended, and five years' supervised probation, with the sentence being subject to further decision on the restitution request.

When the parties and the victim's representative were unable to "agree on the issue of restitution" a hearing was scheduled. *Id*. at 224-25. The defendant again argued that he could not be ordered to pay restitution because restitution was not a term of his plea agreement. The circuit court ruled that although the plea agreement capped the amount of "active incarceration" the defendant could be ordered to serve, it did not limit the court's discretion to impose conditions of probation, including restitution. Observing that the defendant "'got the benefit of his [bargain],'" the court concluded that restitution as a condition of probation would not contravene the plea agreement, and ordered restitution as such a condition. *Id*. at 225 (alteration in original).

The defendant filed an application for leave to appeal in this Court, which was granted. We examined the terms of the plea agreement and assessed, as a question of law, what a reasonable person in the defendant's position would have thought the language of the

21

oral plea agreement meant, taking existing sentencing law into account. We pointed out that the State "did not expressly require that [the defendant] pay restitution as part of the plea agreement [nor did the] State expressly waive the right to request restitution, either by it or by the victim directly." *Id*. at 233. We held that the defendant "could not reasonably have believed that the terms of the bargain impliedly waived the victim's right to restitution" and that, even if the defendant "might have understood the *State* was impliedly waiving its right to restitution, [he] should reasonably have understood that the *victim* was not." *Id*. at 234 (emphasis in original). Thus, the plea agreement "contained neither an express nor an implied waiver of the victim's right to restitution in a criminal and/or civil proceeding." *Id*. We observed that payment of restitution is a common condition of probation, and a period of probation necessarily was imposed because the plea agreement called for a split sentence. *Id*. at 234-35. *See also Carlini v. State*, 215 Md. App. at 455 (discussing *Rankin* and *Lafontant* and holding, in part, that "[t]he failure of a plea agreement to mention restitution by no means implies that there is an agreed-upon sentencing cap that precludes restitution.").

We return to the case at bar. Griffin and the State emphasize that this plea agreement was in writing (*i.e.*, in the form of the Proffer Agreement), was specific, did not mention restitution, and recited that it was "the full and complete agreement of the parties." They maintain that for these reasons the plain language of the plea agreement did not permit an award of restitution, and Griffin reasonably would not have expected that he could be ordered to pay restitution to Lindsey.

22

Griffin and the State ignore the critical fact that the plea agreement called for a split sentence *but was silent about probation*. Section 6-222 and the holdings in *Rankin* and *Lafontant* make clear that when a court imposes a split sentence, a period of probation *must* be ordered for at least a portion of the suspended time, because otherwise the sentence only would be for the executed time. *See Cathcart*, 397 Md. at 329. Thus, even though the plea agreement, as memorialized in the "Proffer Agreement," said nothing about probation, and said it was the complete agreement of the parties, a period of probation was an implicit term of the agreement. If that were not the case, the express and most essential terms of the plea agreement would have changed: instead of being an agreement to a "sentencing cap of 15 years suspend all but 18 months," it would have been an agreement to a sentence of 18 months only.

Tellingly, at sentencing Griffin did not object to the court's ordering him to serve three years' probation, notwithstanding that the "Proffer Agreement" said nothing about probation and said that it was the complete agreement of the parties. For the reasons we have explained, and in particular as discussed in *Rankin*, a period of probation was implicit in the terms of the plea agreement to a split sentence and Griffin could not reasonably have expected that no period of probation would be imposed.

As noted, probation is by definition subject to conditions. Restitution is a standard, frequently imposed condition of probation. *Lafontant*, 197 Md. App. at 235. Indeed, the Probation/Supervision Order issued against Griffin consisted of a form listing "Standard

23

conditions" that could be checked, including payment of restitution. Moreover, it was apparent that Lindsey was not a party to the "Proffer Agreement." Under section 11-603(b), Lindsey had an independent, presumptive right to restitution if he requested it and presented competent evidence of the losses he sustained as a direct result of the crime. The State had no power to waive Lindsey's independent right to seek restitution. Like the plea agreement in *Lafontant*, the plea agreement here did not include an express or implied waiver of the victim's right to restitution  For these reasons, Griffin could not have entered into the "Proffer Agreement" with a reasonable expectation that, if he cooperated with the State in accordance with the terms of the agreement, he would not and could not be ordered to pay restitution as a condition of the probation that was implicit in the agreement.[11]

The circuit court erred in its legal conclusion that it was not "allowed" to order restitution at the January 13, 2012 sentencing hearing, because doing so would violate the terms of Griffin's plea agreement. A period of probation was an implicit term of the plea agreement; probation is by definition subject to conditions; and the payment of restitution is an often-imposed condition of probation. When, at the sentencing hearing, Lindsey, through his representative, requested restitution, the court should have received Lindsey's medical bills in evidence, considered Lindsey's presumptive right to restitution, and decided whether

---

[11] The State also argues that Williams failed to support the restitution request at the sentencing hearing because she did not present any "competent evidence" of the losses at that time. This argument lacks merit. The trial judge told Williams that he was "not allowed" to order restitution. For that reason, Williams was not given an opportunity to submit medical bills to support her restitution request.

24

to order Griffin to pay restitution to Lindsey as a condition of Griffin's probation.[12]  It follows that the court also erred as a matter of law when, on March 7, 2012, it denied Lindsey's motion for reconsideration on that same basis (and an additional basis, which we discuss next); and that it abused its discretion by exercising its discretion based on an error of law.

**IV.**

**Would Granting Lindsey's Motion for Reconsideration by Ordering Restitution as a Condition of Probation Illegally Increase Griffin's Sentence?**

In denying Lindsey's motion for reconsideration, the circuit court also ruled that it could not order Griffin to pay restitution, even as a condition of probation, because that would be an illegal increase in his sentence. Lindsey contends this ruling was legally erroneous. With respect to restitution as a condition of probation, Lindsey points out that Rule 4-346 permits a court to modify the conditions of probation at any time before the expiration of the probationary period, including by "impos[ing] additional conditions." Thus, he suggests that restitution may be imposed as a condition of probation post-sentencing without effecting an increase in the sentence or implicating the right against double jeopardy. With respect to restitution as part of a sentence, he argues that because the legislature has authorized a crime victim to file a motion for reconsideration of the denial or failure to

---

[12] As noted above, notwithstanding that section 11-603(a) states that a victim's right to restitution is "presumed" if requested and if competent evidence of reimbursable costs is presented to the court, the court retains discretion not to order restitution if it finds that the defendant does not have the ability to pay restitution or that "there are extenuating circumstances that make a judgment of restitution inappropriate." Cr. P. § 11-605(a).

25

consider a restitution request, there can be no expectation of finality in a restitution disposition until the thirty-day period in which to file such a motion for reconsideration has expired.

Griffin counters that whether ordered as a sentence or a condition of probation, restitution is a penalty and therefore an order directing the payment of restitution after sentence has been imposed is an increase in the defendant's sentence that violates Rule 4-345 (which limits a circuit court's authority to increase a sentence), the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, and the Maryland common law of double jeopardy.

We have held in Section III that Griffin's plea agreement did not preclude the court from ordering him to pay restitution as a condition of his probation. Restitution, whether ordered as a condition of probation or entered as part of the judgment of conviction, is a criminal sanction that can be challenged as an illegal sentence. *See Chaney v. State*, 397 Md. 460, 470 (2007) ("An order of restitution entered in a criminal case, even when attached as a condition of probation, is a criminal sanction–part of the punishment for the crime" and is "part of a criminal sentence"); *Stachowski v. State*, 213 Md. App. 1, 13-14 (2013) (restitution imposed as a condition of probation may be challenged as an illegal sentence), *cert. granted* 436 Md. 327 (2013); *Carter v. State*, 193 Md. App. 193 (2010) (restitution imposed as a condition of probation before judgment may be challenged as an "illegal sentence" pursuant

to Rule 4-345).[13] It follows that, had Griffin been ordered to pay restitution at the March 7, 2012 hearing, whether as a condition of his probation or as part of the judgment of conviction, that would have amounted to an increase in his sentence. Thus, we must determine whether such an increase would have been lawful.

We begin by considering Griffin's argument that "ordering restitution after the January 13, 2012, sentencing would have exceeded the court's revisory powers under Rule 4-345." In relevant part, Rule 4-345 provides that the court "may correct an illegal sentence at any time" and that, upon the filing of a timely motion, a circuit court has revisory power over its sentence for a period of five years but "it may not increase the sentence." Md. Rule 4-345(a) and (e), respectively.

In *Hoile v. State,* 404 Md. at 591, the Court of Appeals explained that, under Rule 4-345, a circuit court only may increase a sentence if the original sentence was "illegal."[14] A sentence is illegal if it is "not permitted by law" and the illegality must "inhere in [the defendant's] sentence." 404 Md. at 621-22 (alteration in *Hoile*) (internal quotation marks

_____

[13] *But see Lopez-Sanchez*, 388 Md. at 248 (Wilner, J., concurring) ("In a criminal case, a restitution order, *unless entered as a condition of probation*, is entered as a judgment that becomes part of a criminal sentence." (emphasis added)); *Nimon v. State*, 71 Md. App. 559 (1987) (vacating a sentence entered at a resentencing proceeding following a prior remand from this Court and holding that because "restitution was not part of the original sentence . . ., adding the requirement of restitution as part of the sentence [on remand] (*instead of as a condition of probation*) constituted the imposition of a greater or harsher sentence than was originally imposed") (parenthetical in original; emphasis added).

[14] The Court pointed out another exception, allowing a sentence increase under subsection (c) of that rule, to correct a sentence when the court made "an evident mistake in the announcement" of the sentence before the defendant left the courtroom.

omitted). As the *Hoile* Court explained, ordinarily, an illegal sentence is one that could not have been imposed under the law, such as a sentence for a crime the defendant was not convicted of or a sentence that is less than a mandatory minimum sentence required by law. *Id*. at 621.

In *Hoile*, in the Circuit Court for Prince George's County, the defendant pleaded guilty to first-degree assault and was sentenced to 15 years in prison, with all suspended in favor of five years' probation. Three years later, he violated the terms of his probation and was ordered to serve his original 15-year sentence concurrent with a sentence he was serving in a separate case in the Circuit Court for Calvert County. The defendant moved for reconsideration of the sentence in his Prince George's County case, asking that he be committed to the Department of Health and Mental Hygiene ("DHMH") for substance abuse treatment instead of serving his sentence in a correctional institution. The court held a hearing and granted the motion. The Circuit Court for Calvert County also was asked to reconsider the defendant's sentence, but declined to do so. Because the defendant could not be committed to DHMH while he was incarcerated, the modified Prince George's County Circuit Court sentence could not be carried out. The Circuit Court for Prince George's County held another hearing and modified the defendant's sentence to time served, followed by five years' supervised probation.

Eight months later, the victim in the Prince George's County case informed the court that she had not been notified of either of the hearings at which the court had modified the

28

defendant's sentence, despite having requested such notification. The court held a hearing and found that the victim had not been notified as required by Maryland law. It vacated the sentence imposed at the second modification hearing, found that the defendant had violated the terms of his probation, and reinstated the original sentence (*i.e.*, 15 years' incarceration) until such time as it could consider the merits of the "now resurrected" motion to reconsider that sentence with proper notice to the victim. *Id*. at 601. A new commitment order was issued to this effect. The defendant noted an immediate appeal.

The case reached the Court of Appeals, which held that the circuit court had illegally increased the defendant's sentence when it "vacated his sentence of probation and reimposed a sentence of incarceration." *Id*. at 602. The Court explained that the denial of a crime victim's rights at a sentencing hearing is a procedural error that does not inhere in the sentence and does not render an otherwise legal sentence illegal and subject to "correct[ion] by the Circuit Court pursuant to Maryland Rule 4-345(a)." *Id*. at 620. Moreover, although, pursuant to Rule 4-345(b), a circuit court has revisory power over a sentence if there was "fraud, mistake, or irregularity," its revisory power is limited to corrections that do not result in an increase in the sentence. The Court vacated the sentence of incarceration and remanded with instructions for the circuit court to reimpose the sentence of probation entered at the second modification hearing. The Court commented that its decision revealed "the illusory nature of the enforcement of victims' rights" because Maryland law at that time did not

29

provide any "tangible remedy for a victim to seek to 'un do' what already ha[d] been done in a criminal case." 404 Md. at 628.

It is clear from *Hoile* that the sentence imposed on Griffin – a term of 15 years, suspend all but 18 months, followed by a term of three years of supervised probation – was not illegal. As explained, the trial court denied Lindsey's request for restitution at the January 13, 2012 sentencing hearing because it incorrectly perceived that it could not order restitution without breaching the terms of Griffin's plea agreement with the State. The trial court's denial of restitution on an incorrect legal ground did not make the sentence imposed inherently illegal. Thus, the sentence was not subject to correction under Rule 4-345.

In 2011, motivated at least in part by the concerns expressed by the *Hoile* Court,[15] the legislature amended section 11-103 to add subsection (e). As we have explained, section 11-103(e) permits a victim to "file a motion requesting relief within 30 days of the denial or alleged failure to consider" his or her "right to restitution" and permits a trial court, upon a finding that the victim's right to restitution was not considered or was "improperly denied," to enter a judgment of restitution.[16] Because restitution may be ordered as part of a criminal

---

[15] In an undated memorandum to the Senate Judicial Proceedings Committee, Delegate Geraldine Valentino-Smith explained that the amendments to section 11-103 were intended to correct the "illusory" nature of certain victim's rights. She quoted the *Hoile* Court's observation that victims lacked any "effective, tangible remedy . . . to 'un-do' what already has been done in a criminal case."

[16] In 2013, the General Assembly again amended Cr. P. section 11-103. 2013 Laws of Maryland, Ch. 363, § 1. Subsection (e) now reads:

(continued...)

defendant's sentence or made a condition of a term of probation, *see* Cr. P. § 11-607(a), the

ruling on a request for restitution ordinarily is made at the time of sentencing. By enacting

section 11-103(e)(2), granting a crime victim 30 days after "an alleged failure to consider"

or a "denial" of a right to restitution to seek relief, the legislature plainly intended to extend

beyond the date of sentencing the time in which a court may award restitution. Section 11-

103(e)(2) expressly authorizes the court to enter a judgment of restitution on a timely motion

---

[16](...continued)
(e)(1) In any court proceeding involving a crime against a victim, the court
shall ensure that the victim is in fact afforded the rights provided to victims by
law.
**(2) If a court finds that a victim's right was not considered or was denied,
the court may grant the victim relief provided the remedy does not violate
the constitutional right of a defendant or child respondent to be free from
double jeopardy.**
**(3) A court may not provide a remedy that modifies a sentence of
incarceration of a defendant or a commitment of a child respondent unless
the victim requests relief from a violation of the victim's right within 30
days of the alleged violation.**
(4)(i) A victim who alleges that the victim's right to restitution under § 11-603
of this title was not considered or was improperly denied may file a motion
requesting relief within 30 days of the denial or alleged failure to consider.
(ii) If the court finds that the victim's right to restitution under § 11-603 of this
title was not considered or was improperly denied, the court may enter a
judgment of restitution.

(Newly added language in bold.)

The amendments to Cr. P. section 11-103(e) expand the authority of the trial court to
"grant relief" to a victim if it finds that any "right" afforded to the victim was "not
considered or denied." This would include notice rights and the right to attend and be heard
at various proceedings, both before and after sentencing, so long as the defendant's "right
. . . to be free from double jeopardy" is not violated. The language affording a victim a right
to seek reconsideration of an adverse restitution decision remains unchanged, however.

31

for reconsideration if it finds that the restitution request was not considered or was denied, improperly, at sentencing. Thus, in the instant case, if the trial court found that it had improperly denied Lindsey's request for restitution at the January 12, 2012 sentencing hearing, it had the statutory authority to revise the sentence by ordering restitution without violating Rule 4-345(c).

Griffin argues, however, that, even if the court was authorized to order restitution after it had imposed a sentence that did not include restitution, doing so would have violated his double jeopardy rights under the federal Double Jeopardy clause and/or the Maryland common law of double jeopardy. The federal Double Jeopardy clause protects "against a second prosecution for the same offense after acquittal"; "a second prosecution for the same offense after conviction"; and "*multiple punishments for the same offense.*" *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (emphasis added). Maryland is one of a handful of states without a double jeopardy clause in its constitution*, see, e.g., Hagez v. State*, 131 Md. App. 402, 422 (2000); however, we afford criminal defendants the same protections under our common law of double jeopardy. *See State v. Taylor*, 371 Md. 617, 630 (2002) (common law pleas of *autrefois convict* and pardon protect criminal defendants from being prosecuted multiple times for the same offense or from being punished multiple times for the same offense). *See also Giddins v. State*, 393 Md. 1, 19 (2006) (common law plea of *autrefois acquit* bars a second prosecution for the same offense following an acquittal).

32

The instant case implicates only the double jeopardy prohibition against multiple punishments for the same offense. *United States v. DiFrancesco*, 449 U.S. 117 (1980), is the leading case governing that aspect of double jeopardy law. There, the Supreme Court held that a section of a federal criminal statute that permitted the Government to challenge on appeal a sentence imposed upon a defendant found to be a "dangerous special offender" did not offend double jeopardy principles. The Court pointed out that, under federal double jeopardy law, a sentence never has been accorded the finality of an acquittal, and, in a variety of circumstances, may be increased without violating double jeopardy principles. For example, on retrial following the reversal of a conviction, there is no federal constitutional bar to the imposition of a more severe sentence. 449 U.S. at 135 (citing *Pearce*, 395 U.S. at 711). The Court reasoned that, because the "dangerous special offender" statute specifically authorized the Government to challenge a sentence on appeal, a defendant could have "no expectation of finality in [his or her] original sentence." *Id*. at 139. *See also United States v. Bello*, 767 F.2d 1065, 1070 (4th Cir. 1985) (double jeopardy inquiry "to determine whether an increase in the sentence is essentially a multiple punishment for the same offense" turns on "whether the defendant had a legitimate expectation of finality as to the severity of his sentence").

The question whether a post-sentencing award of restitution is permissible under *DiFrancesco* is an issue of first impression in Maryland.[17] Courts in many of our sister states

---

[17]In a concurring opinion in *Lopez-Sanchez*, 388 Md. at 214, Judge Wilner discussed
(continued...)

have addressed this issue and have held that when a statutory scheme permits restitution to be awarded or modified after sentencing, a criminal defendant can have no legitimate expectation of finality in a sentence that does not include restitution (or, if modifiable, in the amount of the restitution ordered) until such time as the statutory period for the making of a request for restitution or the making of an award of restitution has expired. For instance, in *State v. Perry*, 510 N.W.2d 722 (Wis. Ct. App. 1993), the defendant was charged with aggravated battery arising from an incident in which he inflicted cutting wounds on the victim with a knife during a fight. A friend of his also was charged in relation to the same incident and was tried separately. The defendant was convicted and sentenced and began serving time before his co-defendant's trial was completed. The trial court decided that, because both men were charged with crimes causing the victim's injuries, it would be fair

---

[17](...continued)
this issue in the context of a victim's appeal from a judgment entered in a juvenile delinquency proceeding. The victim of the juvenile delinquent's act was granted limited restitution by the Juvenile Court by means of a consent order that was approved by that court without notice to the victim and without affording the victim an opportunity to be heard. The victim unsuccessfully sought reconsideration of the consent order before the Juvenile Court. His application for leave to appeal the denial of his motion for reconsideration was granted by this Court, but we ultimately dismissed the appeal because, at that time, a victim of a delinquent act was not afforded any right to appeal a denial of his or her rights. The Court of Appeals granted *certiorari* and affirmed the dismissal. Thereafter, the legislature amended section 11-103(b) to permit a victim of a delinquent act to seek leave to appeal.

Judge Wilner wrote separately to express his view that the Juvenile Court had erred by denying the victim's motion for reconsideration. In reliance upon *DiFrancesco* and its progeny, Judge Wilner opined that, because the Juvenile Court's judgment expressly retained jurisdiction over the matter, the juvenile did not have a legitimate expectation of finality in the disposition, especially given that the victim had a statutory right to restitution that had been violated.

34

and efficient to determine the issue of restitution at a joint proceeding with the co-defendant, if he were convicted. The co-defendant then was convicted, and the court held a restitution hearing and ordered the defendant to pay restitution. The defendant appealed, arguing that the trial court had violated the restitution statutes and his double jeopardy rights when it ordered him to pay restitution after he already had been sentenced.

As relevant here, the Wisconsin restitution statute permitted a trial court to "'[a]djourn [a] sentencing proceeding for up to 60 days pending resolution of the amount of restitution.'" 510 N.W.2d at 53 (quoting the relevant statute). The trial court's award of restitution was made outside that 60-day period, but the appellate court held, for reasons not relevant to our analysis, that the time period was directory, not mandatory, and the trial court had compelling reasons to delay the restitution hearing until after the co-defendant's trial. Of significance to the case at bar, the appellate court rejected the defendant's argument that the award of restitution violated his "constitutional protection against double jeopardy," opining:

> [The defendant] himself points out that [Wisconsin] courts in fact are allowed to increase or add restitution after the initial disposition. The law of double jeopardy largely conforms to the applicable statutory framework, but this is because the protection is keyed to the convicted offender's expectations about the finality of the punishment meted out. *See United States v. DiFrancesco*, 449 U.S. 117, 136-37 (1980). [The defendant] knew at the conclusion of the September 1992 sentencing hearing that the restitution determination proceedings were very likely to follow; he had no legitimate expectation that he would escape the restitution order. Therefore, [his] restitution determination proceedings did not offend any finality expectations.

510 N.W.2d at 727 (parallel citation omitted).

35

The Supreme Court of Washington, sitting *en banc*, reached a similar conclusion in *State v. Gonzales*, 226 P.3d 131 (Wash. 2010). In that case, the defendant challenged on appeal an order modifying the amount of restitution he was obligated to pay, arguing both that it was entered in violation of the governing restitution statute and that it "constituted a second punishment in violation of double jeopardy." 226 P.3d at 132. The appellate court rejected both arguments. It explained that, by statute, a trial court could enter an order of restitution at any time within 180 days after a proceeding in which sentence was imposed or beyond that time if the court continued the restitution hearing for good cause shown. A separate statutory provision permitted the court to modify "the amount, terms, and conditions" of an order of restitution. *Id.* at 134. In the defendant's case, the court had entered an order of restitution at the time of his sentencing. The order subsequently was amended to correct a clerical error. Over 900 days later, the State moved for the entry of a modified restitution order to reflect additional expenses incurred by the victim as a result of his injuries. The court granted the motion and entered a modified restitution order, which more than doubled the total amount of restitution the defendant was obligated to pay.

On appeal from that order, the appellate court rejected the defendant's contention that the modification statute only permitted a modification of the amount of the monthly restitution payment, not a modification of the total amount of restitution. It then turned to his constitutional argument. After discussing *DiFrancesco*, the court opined:

> Here, [the defendant] was on notice that his sentence could be modified. As explained above, the restitution statute allows for the total amount to be

36

amended. RCW 9.94A.753(4). Because everyone is charged with knowing what the law is, [the defendant] is deemed to know that his restitution order was amendable. While it is conceivable that the passage of time alone could be sufficient to give rise to a legitimate expectation of finality, sufficient time has not passed in this case. At trial, [the defendant] was made aware of the nature and extent of [the victim's] injuries. He knew that [the victim's] injuries were severe and would take substantial treatment time. Therefore, [he] could not have had a legitimate belief that the restitution order was final at the time the amended restitution order was entered.

Because [the defendant] did not have a legitimate expectation of finality in the restitution portion of his sentence, and because the restitution amount is consistent with RCW 9.94A.753(3), double jeopardy was not violated when the trial court entered the amended order of restitution.

*Id*. at 137. *See also People v. Rockne*, 315 P.3d 172, 175 (Colo. App. 2012) (no violation of the defendant's double jeopardy rights when a supplemental restitution order was entered consistent with the statutory scheme because "[a] defendant can have no legitimate expectation of finality in a sentence that, by statute, is subject to further review and revision") (internal quotation marks omitted) (alteration in *Rockne*); *Reyes v. State*, 978 P.2d 635, 640 (Alaska Ct. App. 1999) (when the State failed to request restitution because it mistakenly believed that the victim's medical expenses would be paid by a government assistance program, the defendant *did* have a legitimate expectation of finality in his sentence and a post-sentencing restitution order violated double jeopardy principles).

We are persuaded by the reasoning of these cases that because the General Assembly has authorized crime victims to seek reconsideration of the denial (or failure to consider) a restitution request, and because the denial (or failure to consider) a restitution request ordinarily will occur at the time of sentencing, when a crime victim requests restitution but

the request is not granted or is not considered, a criminal defendant cannot have a reasonable expectation of finality in a sentence that does not include restitution until the 30-day period in which to seek reconsideration has expired. Until that 30-day period has run, a sentence that does not include restitution, when a request for restitution was made, lacks the type of "finality" accorded constitutional significance and may be revised upon a timely motion for reconsideration under section 11-103(e)(2), to add a requirement to pay restitution.[18]

Lindsey requested restitution at the sentencing hearing. As we have held, the court denied that request based on its erroneous conclusion that the plea agreement barred an award of restitution. For the reasons set forth above, a reasonable person in Griffin's position at sentencing could not have held a legitimate expectation of finality regarding the no restitution aspect of the sentence and conditions of probation because Lindsey had 30 days in which to move for reconsideration.

Upon ruling on Lindsey's motion for reconsideration, the court had discretion to order restitution as a condition of Griffin's probation without violating the plea agreement, without violating Rule 4-345, and without violating Griffin's double jeopardy rights. Because the trial court denied Lindsey's motion for reconsideration for reasons that were legally erroneous, it abused its discretion. *Bass*, 206 Md. App. at 11. Accordingly, we shall vacate

---

[18]The judgment of conviction is final for purposes of appeal, as we have explained. but until the 30-day period for moving to reconsider the request for restitution has expired, the defendant cannot have a reasonable expectation that a restitution denial will hold firm and that restitution will not be ordered.

the trial court's order denying Lindsey's motion for reconsideration and remand for further

proceedings not inconsistent with this opinion.

> **MARCH 7, 2012 ORDER OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY DENYING THE MOTION FOR RECONSIDERATION OF THE DENIAL OF THE REQUEST FOR RESTITUTION VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS. COSTS TO BE PAID ONE-HALF BY SHYQUILLE GRIFFIN AND ONE-HALF BY PRINCE GEORGE'S COUNTY.**