*Shyquille Griffin v. Andrew Lindsey, et al.*, No. 88, September Term, 2014, Opinion by Adkins, J.

**MARYLAND CODE (2001, 2008 REPL. VOL., 2011 SUPP.), § 11-103(b) OF THE CRIMINAL PROCEDURE ARTICLE ("CP") — VICTIM'S RIGHT TO APPEAL — STATUTORY CONSTRUCTION:** CP § 11-103(b), which permitted a crime victim to file an application for leave to appeal an interlocutory or final order that denied or failed to consider a right secured to the victim by explicitly enumerated statutes, did not permit a crime victim to file an application for leave to appeal the denial of a motion for reconsideration filed under CP § 11-103(e).

IN THE COURT OF APPEALS

OF MARYLAND

No. 88

September Term, 2014

SHYQUILLE GRIFFIN

v.

ANDREW LINDSEY, et al.

Barbera, C.J.
*Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Adkins, J.
Greene and McDonald, JJ., dissent.

Filed: August 4, 2015

* Harrell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

In Maryland, a victim is not a party to a criminal prosecution. *Hoile v. State*, 404 Md. 591, 606, 948 A.2d 30, 39 (2008). Nevertheless, crime victims are vested with a number of "specific, but narrow" constitutional and statutory rights in criminal proceedings. *Id.* at 605, 948 A.2d at 39. For example, Maryland Code (2001, 2008 Repl. Vol., 2014 Supp.), § 11-603 of the Criminal Procedure Article permits a court to enter a judgment of restitution ordering a defendant to compensate a victim for monetary loss. When a victim alleges that a court failed to consider or improperly denied a restitution request, § 11-103(e) of the Criminal Procedure Article permits the victim to file a motion for reconsideration: "A victim who alleges that the victim's right to restitution under § 11-603 of this title was not considered or was improperly denied may file a motion requesting relief within 30 days of the denial or alleged failure to consider." And § 11-103(b) of the Criminal Procedure Article permits the victim to file an application for leave to appeal:

> Although not a party to a criminal or juvenile proceeding, a victim of a crime for which the defendant or child respondent is charged may file an application for leave to appeal to the Court of Special Appeals from an interlocutory order or appeal to the Court of Special Appeals from a final order that denies or fails to consider a right secured to the victim by . . . § 11-603 of this title[.]

Pursuant to Maryland Rule 8-204(b), an application for to leave to appeal "shall be filed within 30 days after entry of the judgment or order from which the appeal is sought." In this case, we consider whether the Court of Special Appeals had jurisdiction to consider an appeal challenging a denial of restitution when the application for leave to appeal was filed more than 30 days after a final sentencing judgment, but less than 30 days after the denial of a motion for reconsideration challenging the sentencing judgment.

**FACTS AND LEGAL PROCEEDINGS**

In May 2011, Petitioner, Shyquille Griffin, and Antonio Whitely arranged to purchase marijuana from Respondent, Andrew Lindsey. When the three met to consummate the transaction, Whitely was dissatisfied with the quantity of marijuana that Lindsey provided. Consequently, Griffin approached Lindsey, who was seated in his vehicle, and asked him "for what else he had in the car." Whitely then approached with a handgun brandished and pointed the weapon at Lindsey, demanding "everything that he had in the vehicle." As Lindsey drove off, Whitely shot him in the arm.

Griffin and Whitely were indicted in June 2011 on charges related to the shooting.[1] On November 30, 2011, Griffin entered a plea agreement (the "Agreement") with the State. The Agreement provided that if Griffin provided truthful testimony in the State's case against Whitely, the State would agree to a guilty plea for Count 4 of the indictment—Attempted Robbery—and a sentencing cap of 15 years, suspending all but 18 months. The Agreement did not mention restitution, and it contained a provision stating that it represented "the full and complete agreement of the parties."

At a plea hearing conducted on December 16, 2011, the parties presented the Agreement to the Circuit Court for Prince George's County. The hearing judge accepted

---

[1] Griffin was charged with 14 Counts: Attempted Murder (Count 1); Attempted Second Degree Murder (Count 2); Attempted Robbery with a Dangerous Weapon (Count 3); Attempted Robbery (Count 4); First Degree Assault (Count 5); Second Degree Assault (Count 6); Use of Handgun in Commission of a Crime of Violence (Count 7); Carrying a Handgun (Count 8); Transporting Handgun on Roadway (Count 9); Possessing Regulated Firearm by Person Under 21 Years of Age (Count 10); Attempted Theft (Count 11); Conspiracy to Commit Murder (Count 12); Carrying a Handgun (Count 13); and Transporting Handgun on Roadway (Count 14).

the terms of the Agreement, concluding that there was a sufficient factual basis for the guilty plea to Count 4. The hearing judge then postponed sentencing until January 2012.

After satisfying the terms of the Agreement,[2] Griffin returned to court on January 13, 2012 for sentencing under the plea agreement. Acknowledging that "there [was] nothing in the plea agreement about restitution," the State nevertheless advised the court that Lindsey was seeking $9,700 in restitution. Relying on *Lafontant v. State*, 197 Md. App. 217, 13 A.3d 56 (2011), the State argued that a victim has an absolute right to request restitution regardless of whether it appeared in a plea agreement. The hearing court disagreed, concluding that it could not order restitution because it would violate the Agreement by adding to the penalty. Consistent with the Agreement, the Circuit Court sentenced Griffin to 15 years of incarceration, suspending all but 18 months, and three years of supervised probation. It did not order restitution.

Invoking § 11-103(e) of the Criminal Procedure Article and arguing that the hearing court improperly denied his request for restitution, Lindsey filed a timely "Motion for Reconsideration of Restitution and Request for Hearing" ("CP § 11-103(e) Motion") on February 13, 2012. The Circuit Court denied the CP § 11-103(e) Motion on March 7, 2012, reiterating that ordering restitution would violate the Agreement, which did not include restitution, and reasoning, for the first time, that ordering restitution would violate "the Constitution."

_____

[2] Whitely also entered a plea agreement with the State.

Lindsey filed an "Application for Leave to Appeal to the Court of Special Appeals" ("Application") on April 5, 2012, which was granted. The intermediate appellate court reversed the Circuit Court, holding that although the Application was untimely with respect to the Circuit Court's January 13, 2012 sentencing judgment, the Application was timely with respect to the Circuit Court's March 7, 2012 order denying Lindsey's CP § 11-103(e) Motion.[3] The Court of Special Appeals further held that the Circuit Court abused its discretion when it denied the CP § 11-103(e) Motion because it had discretion to order restitution as a condition of Griffin's probation without violating the Agreement, Maryland Rule 4-345,[4] or Griffin's double jeopardy rights.[5] Griffin filed a Petition for Writ of Certiorari, which we granted to consider the following questions:

1. Do crime victims lack statutory authority to appeal from the denial of a motion for reconsideration under Maryland Code (2008, 2011 Supp.), Criminal Procedure Article § 11-103(e), thus depriving the Court of Special Appeals of jurisdiction to review the [C]ircuit [C]ourt's denial of Mr. Lindsey's motion for reconsideration of his request for restitution?
2. Did the circuit court properly deny Mr. Lindsey's motion for reconsideration of his request for restitution from Mr. Griffin, when the court had already accepted Mr. Griffin's guilty plea pursuant to a plea agreement that prohibited restitution, Mr. Griffin had already performed his part of the plea agreement, and the [C]ircuit [C]ourt had already sentenced Mr. Griffin?[6]

---

[3] *Lindsey v. State*, 218 Md. App. 512, 527–28, 98 A.3d 340, 349–50, *cert. granted sub nom. Griffin v. Lindsey*, 441 Md. 61, 105 A.3d 489 (2014).

[4] Maryland Rule 4-345 governs the revisory power of a sentencing court.

[5] *Lindsey*, 218 Md. App. at 549, 98 A.3d at 362.

[6] Griffin also included several subparts to his second question:

Because we answer yes to the first question, we need not address the second and shall reverse the judgment of the Court of Special Appeals.

## STANDARD OF REVIEW

The Circuit Court ruled that Lindsey was not entitled to restitution as a matter of law. We review questions of law without deference. *See Walter v. Gunter*, 367 Md. 386, 392, 788 A.2d 609, 612 (2002) ("[W]here the order involves an interpretation and application of Maryland statutory and case law, our Court must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review.").

## DISCUSSION

The Circuit Court denied Lindsey's restitution request on two separate occasions: first on January 13, 2012 when it sentenced Griffin without ordering restitution and then again on March 7, 2012 when it denied Lindsey's CP § 11-103(e) Motion. Pursuant to Maryland Rules 8-202(a) and 8-204(b), notices of appeal and applications for leave to appeal, respectively, "shall be filed within 30 days after entry of the judgment or order

---

a. Under the principles of *Cuffley v. State*, 416 Md. 568, 7 A.3d 557 (2010), and *Baines v. State*, 416 Md. 604, 7 A.3d 578 (2010), does a binding plea agreement prohibit restitution when it makes no mention of restitution and purports to be the "full and complete agreement of the parties"?

b. Does a trial court lack authority to grant a victim's request for restitution if the victim does not request restitution until after the court has already accepted a plea agreement that prohibits restitution?

c. When a court has already imposed a sentence that does not include restitution, would granting a victim's request for restitution illegally increase the sentence?

5

from which the appeal" is taken or sought. The 30-day requirement for notices of appeal "is jurisdictional; if [it] is not met, the appellate court acquires no jurisdiction and the appeal must be dismissed." *Houghton v. Cnty. Comm'rs of Kent Cnty.*, 305 Md. 407, 413, 504 A.2d 1145, 1148 (1986), *superseded by Rule on other grounds as stated in Hiob v. Progressive Am. Ins. Co.*, 440 Md. 466, 103 A.3d 596 (2014). "When an application for leave to appeal is granted, and it is determined that the application was not filed timely, this same principle applies, and the appeal must be dismissed." *Keys v. State*, 195 Md. App. 19, 27, 5 A.3d 1113, 1118 (2010).

Lindsey filed his Application on April 5, 2012—more than 30 days after the sentencing judgment, but less than 30 days after the Order denying the CP § 11-103(e) Motion. Although Lindsey satisfied Rule 8-204(b)'s 30-day deadline with respect to his CP § 11-103(e) Motion, we must address whether, when Lindsey filed his Application, victims had a right to file an application for leave to appeal the denial of CP § 11-103(e) motions. If victims did not have this right, Lindsey's Application was untimely and, therefore, the Court of Special Appeals did not have jurisdiction to consider his appeal.

Any right of a victim to file an application for leave to appeal, "must originate from the General Assembly, not from this Court." *Lopez-Sanchez v. State*, 388 Md. 214, 230, 879 A.2d 695, 704 (2005), *superseded by statute on other grounds as stated in Hoile v. State*, 404 Md. at 605, 948 A.2d at 39. When Lindsey filed his Application, Maryland Code (2001, 2008 Repl. Vol., 2011 Supp.), § 11-103(b) of the Criminal Procedure Article ("CP") provided victims the right to file applications for leave to appeal when a court denied or failed to consider a right secured by 12 specific statutes, including the restitution

provision. Noticeably absent from these 12 statutes, however, was CP § 11-103(e)—the "reconsideration provision."

Griffin and Lindsey offer competing interpretations of CP § 11-103(b). Griffin argues that because the reconsideration provision did not appear in CP § 11-103(b), Lindsey did not have a right to file an application for leave to appeal the denial of his CP § 11-103(e) Motion. Lindsey counters that although the reconsideration provision was absent from CP § 11-103(b), a CP § 11-103(e) motion is, at its heart, nothing more than a mechanism for asking a court to review its earlier determination under CP § 11-603—the "restitution provision." In other words, the restitution provision is embodied in a CP § 11-103(e) motion. Thus, Lindsey contends, because the restitution provision appears in CP § 11-103(b), he had a right to file an application for leave to appeal the denial of his CP § 11-103(e) Motion.

When interpreting CP § 11-103(b), we bear in mind that "[t]he cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature." *Walzer v. Osborne*, 395 Md. 563, 571, 911 A.2d 427, 431 (2006) (citation and internal quotation marks omitted). In ascertaining the General Assembly's intent, we apply our oft-repeated canons of statutory construction:

> [W]e begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction . . . . We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory

7

scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.

*Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 580–81, 103 A.3d 658, 663 (2014) (alterations in original).  Specifically, when construing statutes granting the right to appeal, we must do so narrowly.  *Rush v. State*, 403 Md. 68, 98, 939 A.2d 689, 706 (2008).

Beginning with the plain meaning of the language of the statute, the reconsideration provision is clearly absent from CP § 11-103(b).  This is significant because "[t]he principles of applying a plain meaning approach [to statutory construction] include consideration of the doctrine of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another)."  *Hudson v. Hous. Auth. of Balt. City*, 402 Md. 18, 30, 935 A.2d 395, 402 (2007) (citation and internal quotation marks omitted).  This doctrine is a "fundamental principle of construction, long recognized in Maryland."  *Id.*  Although we have stated that this doctrine should be "used with caution,"[7] its application is appropriate in this case because the General Assembly must "expressly grant" the right of appeal.  *Howard Cnty. v. JJM, Inc.*, 301 Md. 256, 261, 482 A.2d 908, 910 (1984).

Consistent with this doctrine, we have held that when a certain element is not expressly stated in the language of a statute or Maryland Rule, the statute or Rule is unambiguous and does not include that element.  For instance, in *Rush v. State*, *supra*, we considered whether Maryland Code (1974, 2006 Repl. Vol.), § 12-302(c)(3) of the Courts and Judicial Proceedings Article ("CJP") permitted a defendant to file a cross-appeal when

---

[7] *Kirkwood v. Provident Sav. Bank of Balt.*, 205 Md. 48, 55, 106 A.2d 103, 107 (1954).

the State appealed the grant of a motion to suppress. Because the plain language of CJP §

12-302(c)(3) only addressed the State's right to appeal an order granting suppression,[8] we

held that the statute was unambiguous and the defendant did not have a right to file a cross-

appeal. *Rush*, 403 Md. at 101–02, 939 A.2d at 708–09 ("Section 12-302(c)(3) does not

confer appellate jurisdiction to hear a defendant's cross-appeal. Rather, the statute clearly

limits the right to appeal . . . to the State[.]"). In support of our decision, we explained that

"[w]here the defendant has been given a specific right to appeal in addition to the right to

appeal from final judgments, the Legislature has been specific in protecting that right." *Id.*

at 101, 939 A.2d at 708. We then contrasted the language of CJP § 12-401, which explicitly

stated that "[t]he defendant may appeal even from a final judgment entered in the District

Court though imposition or execution of sentence has been suspended," with the language

of CJP § 12–302(c)(3), which "sp[oke] only of the State." *Id.* at 101–02, 939 A.2d at 708–

09.

In *State v. Manck*, another case dealing with appellate rights under Maryland Code

(1973, 2002 Repl. Vol., 2004 Cum. Supp.), § 12-302(c) of the Courts and Judicial

---

[8] Maryland Code (1974, 2006 Repl. Vol.), § 12-302(3) of the Courts and Judicial
Proceedings Article, provided, in relevant part:

> (3)(i) In a case involving a crime of violence as defined in §
> 14-101 of the Criminal Law Article, and in cases under §§ 5-
> 602 through 5-609 and §§ 5-612 through 5-614 of the Criminal
> Law Article, the *State* may appeal from a decision of a trial
> court that excludes evidence offered by the State or requires
> the return of property alleged to have been seized in violation
> of the Constitution of the United States, the Maryland
> Constitution, or the Maryland Declaration of Rights.

(Emphasis added.)

Proceedings Article, we concluded that the State did not have a right to appeal the trial court's decision to strike the State's "Notice of Intention to Seek the Penalty of Death." 385 Md. 581, 598, 870 A.2d 196, 206 (2005). Because § 12-302(c) did not explicitly identify this type of trial court decision as one from which the State may appeal, we concluded the State "[c]learly" did not have a right to appeal. *Id.* We explained that expanding the statute's appellate rights beyond those explicitly identified in Section 12-302(c) "would violate the separation of powers doctrine." *Id.* at 598 n.13, 870 A.2d at 206 n.13.

Lindsey argues that we should consider a CP § 11-103(e) motion to be synonymous with an original request for restitution under CP § 11-603. But Lindsey cites no case in which we have held that a motion for reconsideration is the same as, or should be treated the same as, the action that caused the judgment subject to reconsideration. Our independent research, likewise, reveals no such case. Thus, Lindsey cannot overcome the exclusion of the reconsideration provision in CP § 11-103(b) by relying on the inclusion of the restitution provision in CP § 11-103(b).

Not only does Lindsey's argument defy the unambiguous language of CP § 11-103(b), but also it contradicts our reasoning in *Chmurny v. State*, 392 Md. 159, 896 A.2d 354 (2006), in which we concluded that the defendant's appeal was untimely because he failed to file it within 30 days of a final judgment. Shortly after the jury returned several guilty verdicts, the defendant committed suicide. *Id.* at 162, 896 A.2d at 355. Consequently, defense counsel filed a motion to dismiss the case, but the trial court denied it. *Id.* at 162–63, 896 A.2d at 355. Nearly four years later, defense counsel filed a new

10

motion to dismiss that was also denied.[9] *Id.* at 163–64, 896 A.2d at 356. Defense counsel

appealed, but we dismissed the appeal because the trial court's denial of the defendant's

first motion to dismiss was a final judgment and defense counsel failed to appeal within 30

days. We reasoned that "one cannot allow the time for noting an appeal from [a final,

appealable] judgment to lapse and escape the jurisdictional bar by filing another, identical

motion or a *motion to reconsider* the earlier ruling months or years later and then appealing

the denial of that second motion." *Id.* at 166, 896 A.2d at 358 (emphasis added).

---

[9] We indicated that the trial court's denial of the motions to dismiss was error, but lack of timeliness precluded the appeal:

> It is not in the public interest and it is not proper judicial administration or procedure to have criminal cases permanently in limbo, without even the prospect of a judgment ever being entered. Chmurny was found guilty on five counts, but, because he is dead, he cannot be sentenced. . . .
>
> A conviction does not occur in a criminal case until sentence is imposed on a verdict of guilty. That is when judgment is entered. A verdict of guilty alone constitutes neither a conviction nor a sentence and does not constitute a source of relevant legal authority. . . .
>
> Thus, as the case now stands, there is no conviction and no judgment, and, under the court's ruling, there never will be a conviction or judgment; the case will remain permanently open and incomplete on the docket. . . .
>
> Because the case can never move forward to judgment, the only way to bring closure to the case is to abate the proceeding *ab initio*—to vacate the verdicts and the indictment. That is what must be done in these rare cases, and that is what should be done, as a matter of course, when, upon dismissal of this appeal, the case returns to the Circuit Court.

*Chmurny v. State*, 392 Md. 159, 167–68, 896 A.2d 354, 358–59 (2006) (internal citations, quotation marks, and alteration omitted).

11

We have long held that a sentencing judgment is a final judgment for purposes of appeal.[10] Thus, the January 13, 2012 sentencing at which the Circuit Court denied Lindsey's first request for restitution was an appealable final judgment. Applying our reasoning from *Chmurny*, Lindsey had 30 days to file an appeal from this final judgment. He could not "allow the time for noting an appeal from that judgment to lapse and escape the jurisdictional bar by filing a motion to reconsider the earlier ruling . . . and then appealing the denial of that second motion." *Id.* Lindsey filed his Application on April 5, 2012—less than 30 days after his motion for reconsideration was denied, but almost three months after Griffin's sentencing. Like the defendant in *Chmurny*, Lindsey allowed the time for noting an appeal to lapse, and he cannot cure this jurisdictional defect by appealing the denial of a subsequent motion for reconsideration.[11]

Finally, Lindsey's argument further fails because accepting it would undermine our rule that we must narrowly construe statutes granting the right to appeal. *Rush*, 403 Md.

---

[10] *See, e.g.*, *Hoile v. State*, 404 Md. 591, 612, 948 A.2d 30, 43 (2008) ("When sentence is pronounced or imposed, there is a final judgment for purposes of appeal." (citation and internal quotation marks omitted)).

[11] Maryland Code (2001, 2008 Repl. Vol., 2014 Supp.), § 11-103(c) of the Criminal Procedure Article provides that "[t]he filing of an application for leave to appeal . . . does not stay other proceedings in a criminal or juvenile case unless all parties consent." We interpret this provision to mean that a victim is not precluded from simultaneously applying for leave to appeal in an appellate court and moving for reconsideration in a trial court. The situation is similar to that of a defendant who may simultaneously note an appeal and move for reconsideration of the defendant's sentence by a three-judge panel in the trial court. *See Gardner v. State*, 420 Md. 1, 6, 20 A.3d 801, 804 (2011) ("Petitioner, as he is entitled to do, noted an appeal from the judgments of conviction and sought review of the sentence by a three-judge panel[.]").

at 98, 939 A.2d at 706. Holding that a victim could appeal not only from the denial of or failure to consider a right secured by the 12 statutes enumerated in CP § 11-103(b), but also from a motion to reconsider the denial of or failure to consider these rights, would considerably increase victims' appellate rights. Such a construction is anything but narrow and must be rejected.

## CONCLUSION

In conclusion, we hold that Lindsey's appeal was untimely because CP § 11-103(b) did not permit a crime victim to file an application for leave to appeal the denial of a CP § 11-103(e) motion. We construe grants of appellate authority narrowly, and the language of CP § 11-103(b) is unambiguous—it does not include the right to appeal from a denial of a CP § 11-103(e) motion. Griffin's January 13, 2012 sentencing was a final judgment, and Lindsey cannot rely on his appeal from the denial of his subsequent motion for reconsideration to escape his failure to timely file his Application after the sentencing. Accordingly, because Lindsey's appeal was untimely, the Court of Special Appeals did not have jurisdiction to consider it, and we reverse its judgment.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE CIRCUIT COURT'S RULING. COSTS TO BE PAID BY RESPONDENTS.**

13

Circuit Court for Prince George's County
Case No.: CT110980B
Argued: June 4, 2015

IN THE COURT OF APPEALS
OF MARYLAND

No. 88

September Term, 2014
_____

SHYQUILLE GRIFFIN

v.

ANDREW LINDSEY, et al.
_____

Barbera, C.J.
*Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

      JJ.
_____

Dissenting Opinion by Greene, J., which
McDonald, J., joins.

_____

Filed: August 4, 2015

* Harrell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

I respectfully dissent.

Against the General Assembly's goal in enacting § 11-103 of the Criminal Procedure Article ("CP")–which serves to protect the rights victims of crimes are afforded by law–the majority in essence holds that a victim[1] may not seek appellate review of a trial court's final order denying the victim's right to restitution where that final order is the court's response to a timely filed motion to reconsider its previous denial of a request for restitution. Here the timing of the motion for reconsideration afforded the trial judge the opportunity to correct his mistake prior to any appellate intervention. Under the majority's approach today, because Respondent filed a timely motion for reconsideration but failed to simultaneously apply for leave to appeal the court's initial denial of restitution, Respondent extinguished his right to appeal the trial judge's error.[2] That proposition of law, which lies contrary to the language and purpose of the statute, the interests of judicial economy, and the broad language of the Maryland constitution, I must reject.

As the majority has outlined in greater detail, on January 13, 2012, the state informed the trial court during sentencing that Lindsey sought restitution. This motion was denied by the court on the grounds that restitution would violate the terms of Griffin's plea agreement.

---

[1] Although, as a participant to a drug deal gone awry, Lindsey is perhaps an unsympathetic victim, the majority's ruling will impact all victims' rights, including those to whom no fault can be attributed.

[2] While the majority may be correct that a victim is not precluded from simultaneously moving for reconsideration and applying for leave to appeal, it is not clear that victims–who are not parties to the underlying criminal case–are or ought to be *required* to do so in order to preserve their appellate rights. Moreover, it took nearly a month for the trial court to rule on the motion for reconsideration.

The trial court proceeded to sentence Griffin to 15 years of incarceration, with all but 18 months suspended, along with three years of supervised probation. As the majority notes, following the trial court's denial of Lindsey's request for restitution, Respondent filed a timely motion for reconsideration pursuant to CP § 11-103(e)(2) on February 13, 2012, attaching his medical bills to the motion.[3] After a hearing on the matter, conducted on March 7, 2012, the trial court, once again, denied Lindsey's request, asserting that ordering restitution would violate the terms of the plea agreement and would violate the Maryland Constitution. Less than 30 days later, on April 5, Respondent filed an application for leave to appeal to the Court of Special Appeals, which was granted by that court. The Court of Special Appeals reversed the decision of the trial court, concluding that it had abused its discretion when it denied Respondent's CP § 11-103(e) Motion. On review before this Court, the majority holds, despite broad language in the applicable constitutional and statutory provisions, that the judgment of the Court of Special Appeals must be reversed.

Under CP § 11-103(b), as it existed at the time, "a victim of a violent crime . . . may file an application for leave to appeal to the Court of Special Appeals from an interlocutory or final order that denies or fails to consider a right secured to the victim by . . . § 11-603 of

---

[3] At the time Respondent filed his motion, CP § 11-103(e)(2) provided: "A victim who alleges that the victim's right to restitution under CP § 11-603 of this title was not considered or was improperly denied may file a motion requesting relief within 30 days of the denial or alleged failure to consider." This language remains a part of the current statute, however, it now appears in CP § 11-103(e)(4). *See* Chapter 363, 2013 Laws of Maryland (renumbering § 11-103(e)(2) to § 11-103(e)(4), among other things).

2

this title[.]"  The "right secured" by CP § 11-603 is the right to restitution.  The statute

provides in relevant part:

> (a) A court may enter a judgment of restitution that orders a defendant . . . to
> make restitution in addition to any other penalty for the commission of a crime
> or delinquent act, if:
> * * * *
> (2) as a direct result of the crime . . . the victim suffered:
> (i) actual medical . . . expenses or losses[.]
> * * * *
> (b) **A victim is presumed to have a right to restitution under subsection (a)
> of this section if:**
> **(1) the victim or the State requests restitution; and**
> **(2) the court is presented with competent evidence of any item listed
> in subsection (a) of this section.**

CP § 11-603 (emphasis added).

Although the majority is correct that CP § 11-103(e)(2)—the vehicle by which

Respondent timely challenged the trial court's January 13, 2012 denial of the request for

restitution—is not specifically listed in § 11-103(b), the right secured by § 11-103(e)(2) is

the very same right to restitution.  The General Assembly connected these two provisions in

CP § 11-103(e)(2)(i) itself, which provided in whole: "[a] victim who alleges that the

victim's right to restitution under § 11-603 of this title was not considered or was improperly

denied may file a motion requesting relief within 30 days of the denial or alleged failure to

consider."  In case this was not clear enough, the legislature, in the same 2011 amendment

that added § 11-103(e)(2), also included § 11-103(e)(1), which provides in whole: "[i]n any

court proceeding involving a crime against a victim, *the court shall ensure that the victim is*

*in fact afforded the rights provided to victims by law*."  Chapter 362, 2011 Laws of Maryland

3

(also referred to herein as "H.B. 801") (emphasis added).[4] In sum, the denial of the motion for reconsideration was a final order that denied "a right secured to the victim" by CP § 11-603, and Respondent, the "victim of a violent crime," was therefore entitled to "file an application for leave to appeal." I respectfully disagree that the plain meaning of the statute is that Respondent's motion for reconsideration was not capable of being appealed under the circumstances.

The holding of the majority leads to an odd statutory scheme, out of step with the General Assembly's trend in granting victims rights, *see Lopez-Sanchez v. State*, 388 Md. 214, 230 879 A.2d 695, 704 (2005) (Wilner, J., concurring), *superseded by statute as recognized in Hoile v. State*, 404 Md. 591, 605, 948 A.2d 30, 39 (2008). In the majority's view, when Respondent's initial motion for restitution on January 13, 2012 was denied, he should have recognized that the denial was a final order denying a right secured to him as a crime victim. In addition, the majority suggests, he should have appreciated that the denial of a motion to reconsider restitution would not be considered a final order and therefore

---

[4] Through this legislation, the General Assembly intended to provide victims an opportunity to develop a record at the trial level in order to preserve their rights. *See* Bill File to H.B. 801, Letter from Delegate Geraldine Valentino-Smith in Support of H.B. 801 (2011) ("HB 801 would provide the option to allow the victim who was not notified of the proceeding to ask the trial court for relief. If denied, the victim would have created the record to seek an application for leave to appeal[.]"). Moreover, H.B. 801 permitted trial courts to revise prior determinations on restitution without requiring the victim to seek appellate relief. *See* Bill File to H.B. 801, Testimony of Roberta Roper and Russell P. Butler, Maryland Crime Victims' Resource Center, Inc., in Support of H.B. 801 (2011) ("[A] [t]rial court's authority will be clarified [by H.B. 801] to have the ability to revise determinations on restitution without a victim seeking to file leave to appeal in the Court of Special Appeals.").

4

would not be appealable.  In my view, Respondent's reliance on CP §11-103(e)(2), therefore was, indeed, a trap: by not realizing that the denial of the motion for reconsideration would not qualify as a final order denying his right to restitution, Respondent forfeited his right to appellate review.  Failing to simultaneously file a motion for reconsideration and apply for leave to appeal extinguished Respondent's right to appeal an erroneous decision, despite state constitutional provisions and statutes that suggest that the General Assembly is committed at the very least to not erecting such barriers between crime victims and their rights.  Article 47 is worded quite broadly, guaranteeing crime victims the right to "be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process."  Md. Decl. of Rights Art. XLVII.  The majority's holding suggests that the legislature intended to accomplish the opposite in adopting CP § 11-103(e)(2).  While I agree that statutes granting the right to appeal must be construed narrowly, *see Rush v. State*, 403 Md. 68, 98, 939 A.2d 689, 706 (2008), we are not bound to interpret the statute so narrowly that rights granted by the Maryland Constitution and the General Assembly are rendered toothless.

A major concern of the majority appears to be that future victims, and possibly defendants as well, could "allow the time for noting an appeal from [a final, appealable] judgment to lapse and escape the jurisdictional bar by filing another, identical motion or a *motion to reconsider* the earlier ruling months or years later and then appealing the denial of that second motion."  Maj. Slip Op. at 12 (quoting *Chmurny v. State*, 392 Md. 159, 166, 896

5

A.2d 354, 358 (2006)). This concern, in part, appears to arise from the situation in *Chmurny* which the majority discusses at length. The extraordinary circumstances of *Chmurny*, involving the defendant's suicide between the verdict and sentencing, and the lawyer taking it upon himself to attempt to sneak in an appeal by filing an identical motion four years after the trial court denied a motion for reconsideration, make the case less than controlling and diminish its effect on the instant case.

There is no suggestion in the record that Respondent was attempting to skirt the thirty day filing requirement under CP § 11-103(b). Indeed, Respondent submitted a timely motion to reconsider the trial court's decision at sentencing—a decision that should not be punished. The majority's concern, whatever its worth might be in another case, is without merit in the instant matter because, under CP § 11-103(e)(2)(i), Respondent had only thirty days to "file a motion requesting relief." Affirming the Court of Special Appeals would not lead to any of the consequences contemplated by *Chmurny*. Because the victim produced competent evidence of his medical expenses, the trial judge in the instant case was bound by law, absent extraordinary circumstances not present in this case, to order restitution and lacked the discretion to do otherwise. *See* CP § 11-603(b) ("A victim is presumed to have a right to restitution under subsection (a) of this section if . . . the victim or the State requests restitution; and . . . the court is presented with competent evidence of any item listed in subsection (a) of this section.").

Furthermore, affirming the judgment of the Court of Special Appeals would be

6

consistent with appeals from denials of motions for reconsideration in other legal contexts. *See, e.g.*, *Wilson-X v. Dept. of Human Res.*, 403 Md. 667, 674-75, 944 A.2d 509, 514 (2008) ("[T]he ruling on a motion for reconsideration is ordinarily discretionary, and [] the standard of review in such a circumstance is whether the court abused its discretion in denying the motion."); *Grimberg v. Marth*, 338 Md. 546, 553, 659 A.2d 1287, 1290 (1995) (finding that an appeal, filed more than thirty days after judgment but fewer than thirty days after denial of motion for reconsideration, would lie and that the scope of review would be "limited to whether the trial judge abused his discretion in declining to reconsider the judgment"); *First Federated Commodity Trust Corp. v. Comm'r of Sec.*, 272 Md. 329, 332-33, 322 A.2d 539, 542 (1974) (appeal from order dismissing motion to vacate held timely, but scope of review limited to abuse of discretion); *S & G Realty Co., Inc. v. Woodmoor Realty Corp.*, 255 Md. 684, 689, 259 A.2d 281, 283-84 (1969) (involving an appeal filed more than thirty days after the entry of judgment but within thirty days of decision on a motion to set aside or modify decree treated as an appeal solely from a decision on a motion, and abuse of discretion standard applied); *State v. Bundy*, 52 Md. App. 456, 460-61, 450 A.2d 495, 497 (1982) (finding jurisdiction over State's appeal from denial of motion for reconsideration and reviewing the denial under an abuse of discretion standard). Although, "[a]s a general rule, 'a motion to modify or reduce a sentence is directed to the sound discretion of the trial court and is not appealable[,]'" *State v. Rodriguez*, 125 Md. App. 428, 442, 725 A.2d 635, 642 (1999) (citation omitted), the reasons for disallowing an appeal from this sort of

7

motion—when such appeals *are* disallowed—simply are not present in this case. These reasons are the same as those articulated in *Chmurny*: foreclosing a party's ability to sneak in an appeal after letting the time to appeal expire. *See Thomason v. Bucher*, 266 Md. 1, 4-6, 291 A.2d 437, 439 (1972) (citing similar reasons for affirming dismissal of appeal as untimely) and cases cited therein. As noted above, under CP § 11-103(e), victims have only thirty days to file a motion for reconsideration after a court's denial of restitution. Finally, this Court has held that "trial judges do not have discretion to apply inappropriate legal standards, even when making decisions that are regarded as discretionary in nature." *Wilson-X*, 403 Md. at 675, 944 A.2d at 514. Thus, consistent with our case law and the language of CP § 11-103(b), the denial of the motion for reconsideration was appealable and was subject to review for abuse of discretion, including the abuse that "occurs when the judge . . . [']acts beyond the letter or reason of the law.'" *Wilson-X*, 403 Md. at 677, 944 A.2d at 515 (citation omitted). It is important to note that this approach would not, as the majority suggests, "considerably increase victims' appellate rights." Rather, it serves to protect an interest already granted to them by statute, namely, the ability to receive restitution.

Accordingly, I would affirm the judgment of the Court of Special Appeals.

Judge McDonald has authorized me to state that he joins in this dissenting opinion.

8