*Joshua Maddox v. State of Maryland*, No. 990 and 996, September Term, 2019. Opinion by Zarnoch, J.

**STATUTES – STATUTORY INTERPRETATION – CONSEQUENCES**

In construing a statute, the court may "consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Gomez v. Jackson Hewitt, Inc.*, 427 Md. 128, 158-59 (2012) (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75 (1986)).


**CRIMINAL PROCEDURE – STATUTORY INTERPRETATION – EXTENSION OF PROBATION FOR RESTITUTION**

A court has the authority to impose a period of probation, set conditions and determine whether the probation is supervised or unsupervised. *State v. Alexander*, 467 Md. 600, 605-06 (2020). A period of probation typically may not exceed five years. *Id.* Maryland Code, § 6-222(b) of the Criminal Procedure Article permits the court to extend probation beyond five years for the purpose of making restitution. Under this statute, the court does not have the authority to impose additional conditions on a probationer other than to make restitution payments and to engage in the requirements for supervised probation. Similarly, the court does not have the authority under this statute to revoke probation or sanction a probationer for violating a condition other than making restitution payments or engaging in restitution-related misbehavior in a supervised probation.

Circuit Court for Wicomico County
Case Nos. 22-K-09-000928 and 22-K-09-000925

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 990 & 996

September Term, 2019

_____


JOSHUA MADDOX

v.

STATE OF MARYLAND

_____

Fader, C.J.,
Kehoe,
Zarnoch, Robert A.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Zarnoch, J.

_____

Filed:  February 24, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case began in April 2010, when Joshua Maddox ("Maddox") entered *Alford* pleas to second degree arson in the Circuit Court for Wicomico County. At sentencing, the court imposed 24 months of probation subject to the condition that Maddox pay almost $100,000 in restitution. Maddox consented to additional extensions of his probation after the initial 24 months in order to make restitution. In ordering this extension, the court advised that Maddox must also comply with numerous conditions set by the court. Maddox filed a motion to correct an illegal sentence arguing that the court lacked the authority to impose additional conditions of probation other than the order to pay restitution. The court denied this motion. Maddox presents one question for our review:

> When a court extends probation "for the purpose of making restitution" under Crim. Proc. Art. § 6-222(b), may the court impose conditions of probation in addition to the restitution obligation?

**BACKGROUND & PROCEDURAL HISTORY**

I. Probation

*Imposition of Probation*

When a court sentences a defendant following a conviction, "it generally has the option of including a period of probation with respect to one or more counts." *State v. Alexander*, 467 Md. 600, 605 (2020), Md. Code, Crim. Proc. § 6-225. "Probation is a creature of statute, and as such, the terms of probation are derived from statutory authority." *Bailey v. State*, 355 Md. 287, 293 (1999). The court has the authority to set conditions and determine whether probation is supervised or unsupervised. *Alexander*, 467 Md. at 606. A defendant's probation is subject to standard conditions of probation –

for example, "obey all laws, report as directed to probation officer, appear in court when notified to do so, make restitution." *Id.* The court may also impose special conditions – for example, a court can require a probationer to "participate in an alcohol or substance abuse program, complete a specified number of hours of community service, refrain from contact with certain persons." *Id.* Typically, "a period of probation imposed by a circuit court may not exceed five years." *Id.* (citing Crim. Proc. § 6-222(a)(3)(i)). However, in cases such as the present one, "in which restitution is a condition of probation," a circuit court may extend the period of probation for an additional five years "for the purpose of the defendant making restitution." *Id.* at 606-07 (citing Crim. Proc. § 6-222(b)-(c)). A district court may extend the period of probation for an additional three years for the purpose of making restitution. Crim. Proc. § 6-222(b)(1)(ii). Pertinent to this case, the statute states:

> (b)(1) For the purpose of making restitution, the court may extend the probation beyond the time allowed under subsection (a)(3)(i) of this section for:
>     (i) an additional 5 years if the probation is ordered by a circuit court; or
>     (ii) an additional 3 years if the probation is ordered by the District Court.
> (2) An extension of probation under this subsection may be unsupervised or supervised by the Division of Parole and Probation.

Crim. Proc. § 6-222(b). In addition, the court is further restricted in its authority to impose an extension of probation beyond the limit in subsection (b), as follows:

> (c) The Court may extend the probation beyond the time allowed under subsection (b) of this section if:
>     (1) the defendant consents in writing; and
>     (2) the extension is only for making restitution.

Crim. Proc. § 6-222(c). "The power to impose conditions of probation, however, is not unlimited, and thus, the trial court does not have unlimited discretion to order conditions of probation." *Bailey*, 355 Md. at 294.

*Violations of Probation*

If it is alleged that a defendant has violated a condition of probation, the court may determine whether to modify or revoke the probation. *See* Crim. Proc. §§ 6-223, 6-224. The General Assembly has established presumptive limits on sanctions for certain types of probation violations.

**Justice Reinvestment Act Amendments**

The General Assembly enacted the Justice Reinvestment Act ("the Act") in 2016. 2016 Md. Laws, ch. 515. The primary goal of the Act was to reduce the prison population and invest the savings in "strategies to increase public safety and reduce recidivism." Revised Fiscal and Policy Note for Senate Bill 1005 (June 2, 2016). The Justice Reinvestment Coordinating Council ("the Council") found that "[a]lmost 60% of all prison admission represent failures of probation," many of which "stem from technical violations, such as missing an appointment or failing a drug test." *Id.* To achieve this purpose, the Council studied the causes of mass incarceration and identified extended sentences for technical violations of probation as one driving factor. Justice Reinvestment Coordinating Council, Final Report, S.B. 602, 2015 Leg. at 8, 9 (Md. 2015).

Prior to the Act's amendments, if a court found that a probationer violated any condition of probation, the court had the authority to "impose any sentence that might have originally been imposed for the crime of which the probationer or defendant was

convicted." Md. Code, Crim. Proc. § 6-223(d)(2) (2001, 2008 Repl. Vol., 2016 Supp.). The amendments enacted by the Act placed limits on the sanctions for technical violations of probation. *State v. Alexander*, 467 Md. 600, 609 (2020).

A "technical violation" is defined as "a violation of a condition of probation … that does not involve: (1) an arrest or a summons issued by a commissioner on a statement of charges filed by a law enforcement officer; (2) a violation of a criminal prohibition other than a minor traffic offense; (3) a violation of a no-contact or stay-away order; or (4) absconding." Crim. Proc. § 1-101(q) (incorporating the definition of technical violation from Md. Code, § 6-101(m) of the Correctional Services Article). Because the failure to pay restitution does not involve any of the aforementioned conditions, it is clear that it is considered a technical violation.

If a probationer commits a technical violation of their probation, the court may revoke the probation and impose a period of incarceration between 15 to 45 days depending on how many technical violations the probationer has committed at that time. Crim. Proc. § 6-223(d)(2)(i).

II. Facts and Proceedings

On April 7, 2010 Maddox entered *Alford* pleas to second degree arson in two separate cases[1] in the Circuit Court for Wicomico County. In addition to a prison sentence, the court imposed 24 months of probation subject to the condition that Maddox pay $95,000 in restitution in Case No. 925 and $3,500 in restitution in Case No. 928.

---

[1] The case numbers are 22-K-09-000925 ("Case No. 925") and 22-K-09-000928 ("Case No. 928").

Maddox was released from prison in March 2013 and began his probation. The Division of Parole and Probation filed a statement of charges against Maddox on February 27, 2015, alleging that he failed to make restitution in both cases.[2] In May 2015, the State agreed to withdraw the pending violation of probation petitions in exchange for Maddox's consent to extend his probation for an additional three years to March 2018, to provide additional time to make restitution. The court also reduced the amount of restitution to $4,899 in Case No. 925 and $1,101.67 in Case No. 928.

In March 2018, the State again filed a statement of charges in each case against Maddox alleging he failed to pay restitution.[3] The court held a hearing on May 10, 2018 where Maddox brought money orders to indicate his ability to continue to make restitution payments. Maddox consented to a second three-year extension of his probation to March 2021. In ordering the extension, the court explained that "[t]he State at this point is really just trying to collect money … when you are also on probation, all the same conditions of probation apply… If you should violate the laws during this interim extended period of time, you're exposing yourself to a potential violation of probation." The court advised that Maddox would be required to pay court costs, complete mental health and drug and alcohol treatment, take any prescribed medication, make restitution payments, have no contact with the victim, and "have no affiliation with places that respond to fires or any membership with same."

---

[2] The State also alleged that Maddox failed to provide verification that he participated in mental health treatment and he tested positive for marijuana use.

[3] The State also alleged that Maddox failed to complete drug and alcohol treatment.

Later that year, Maddox was charged with violating his probation. The Division of Parole and Probation alleged that he failed to complete drug and alcohol treatment and was charged with new offenses. The Division of Parole and Probation filed a modified statement of charges in June 2019, alleging Maddox was convicted of second degree assault and malicious destruction of property in separate cases.

Maddox filed a motion to correct an illegal sentence on June 25, 2019, arguing that the court lacked authority to impose conditions of probation other than that he pay restitution in his amended sentence in 2018. Following a hearing on June 26, 2019, the court denied the motion. The court reasoned that "[Legislators have] made a distinction that, if you're on probation and you have restitution … there would also be an accompanying need for supervision in order to make sure that everything stays in place so that restitution can be collected." The court explained that if a defendant suffered from an addiction and fails to participate in and complete addiction treatment, the likelihood of collecting restitution is "very limited." This reasoning, the court proffered, provides the court the discretion to offer supervision and all standard conditions of probation for an additional five years. Maddox was sentenced to four years with all but 18 months suspended in Case No. 925, and a suspended, consecutive sentence of three years and six months in Case No. 928.

This timely appeal followed.

## DISCUSSION

### Standard of Review

The crux of this case is the construction of Crim. Proc. § 6-222 – in particular, whether the phrase "for the purpose of making restitution" limits the court's authority to impose conditions of probation in addition to the payment of restitution. This Court reviews *de novo* the interpretation of a statute and "provides judicial deference to the policy decisions enacted into law by the General Assembly." *Johnson v. State*, 467 Md. 362, 371 (2020) (Internal citation omitted). "We assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly." *Id.*

"The statutory construction analysis begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Id.* at 372 (Internal citations and quotations omitted). The statute is read as a whole and "must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim or policy of the Legislature in enacting the statute." *Id.* (Internal citation omitted). "When the words of a statute are ambiguous and subject to more than one reasonable interpretation … a court must resolve the ambiguity by searching for legislative intent in other indicia." *Id.* (Internal citations and quotations omitted).

Maddox's position is that the plain meaning of Crim. Proc. § 6-222(b) limits a court's authority to impose additional conditions on probation when the purpose of

extending probation is to make restitution payments. The State's position, on the other hand, is that the only limitation on the court's discretion in Crim. Proc. § 6-222 is the duration of the probation period. The State contends that the plain language of the statute does not limit the court's authority to apply conditions of probation "as a means of ensuring that the purpose is actually fulfilled."

**"For the Purpose of Making Restitution" Statutory Text**

The statute itself does not provide a specific definition for the phrase "for the purpose of making restitution," thus we must begin our analysis with common dictionary definitions. Black's Law Dictionary defines "purpose" as "[a]n objective, goal, or end." Black's Law Dictionary (11th ed. 2019). It is clear that the parties are contemplating different definitions, or interpretations, of the word, "purpose." Maddox contends that the use of "purpose" in this context limits the court's authority to impose any conditions other than to make restitution because no other purpose has been provided in the statute and there is no indication that the Legislature intended another purpose. Further, Maddox argues that on the basis of the doctrine "*expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another)," the plain language limits the court's authority. *Griffin v. Lindsey*, 444 Md. 278, 288 (2015) (Internal citations and quotations omitted).

The State emphasizes that the statute does not contain any language limiting the court's authority to apply standard conditions of probation during the extended period of probation. The circuit court also determined that the phrase "for the purpose of making restitution" did not limit the court's authority to impose additional conditions to help

achieve the ultimate purpose of restitution. For example, the court reasoned, if a defendant suffers from an addiction and fails to seek necessary treatment, it is unlikely that the defendant will pay restitution, thus necessitating mandated addiction treatment to achieve the purpose of restitution. Maddox contends that these conditions are prohibited, especially given many conditions are not logically connected to the purpose of restitution, such as receiving permission to move, take a trip, or possess a firearm, as well as special probation conditions, including his condition to have "no affiliation with places that respond to fires."

To the extent these contrary views create ambiguity, we consider the phrase in light of the remainder of the statute.

**Statutory Context**

Within Crim. Proc. § 6-222, there are multiple subsections that discuss the extension of probation for the purpose of restitution. Crim. Proc § 6-222(c) permits the court to extend probation beyond the five years permitted in subsection (b), but under this subsection, the defendant must now consent to the extension. Crim. Proc. § 6-222(c) permits the extension "only" to make restitution payments.

The circuit court differentiated subsection (b) and subsection (c) by explaining that if the extension of probation is "only" for making restitution, then the Legislature would have used that precise language in subsection (b). The court determined that only subsection (c) would prohibit the court from imposing any conditions of probation except the payment of restitution due to the use of limiting language.

Both parties argue that the language of Crim. Proc. § 6-222 is unambiguous, however, they both adopt conflicting interpretations of the statute. These contradictory interpretations seem to suggest that the statute is in fact ambiguous and subject to more than one reasonable interpretation. "Even where the language of a statute is plain and unambiguous, we may look elsewhere to divine legislative intent; the plain meaning rule is not rigid and does not require us to read legislative provisions in rote fashion and in isolation." *Blaine v. Blaine*, 336 Md. 49, 64 (1994). Thus, we proceed to review the legislative history of the statute.

**Legislative History**

Prior to 1980, Maryland courts did not have the authority to extend the term of probation beyond five years for any reason. *Kupfer v. State*, 287 Md. 540, 543-44 (1980). In response to the decision in *Kupfer*, the Legislature amended the law "to allow extension of the probationary period beyond five years with the consent of the defendant, but only for purposes of restitution." *Elias v. State*, 62 Md. App. 569, 573 (1985). The amended statute read, in relevant part, "[i]f the defendant consents in writing, the court may grant probation in excess of 5 years, but only for purposes of making restitution." Md. Code, Art. 27 § 641A(a) (1957, 1982 Repl. Vol.). The bill was introduced with the purpose of providing defendants granted probation sufficient time to make restitution. *See* Summary of Committee Report of House Bill 642 (1984).

In 2001, the Legislature adopted Crim. Proc. § 6-222 without substantive change from § 641A(a)(3) and (4). The new statute read, in relevant part, "[t]he court may extend the probation beyond the time allowed under subsection (a) of this section if: (1) The

defendant consents in writing; and (2) The extension is only for making restitution." Crim. Proc. § 6-222(b) (2001).

In 2003, the Legislature amended the statute to include a new subsection and provide additional authority to the courts to extend probation for an additional five years in circuit court "for the purpose of making restitution." Fiscal and Policy Note, 2003 Session, H.B. 233. After amendment, the statute read, in relevant part:

> (b)(1) Only for the purpose of making restitution, the court may extend the probation beyond the time allowed under subsection (a) of this section for:
> (i) An additional 5 years if the probation is ordered by a circuit court; or
> (ii) An additional 3 years if the probation is ordered by the District Court.
> (2) An extension of probation under this subsection may be unsupervised or supervised by the division of parole and probation.
> (c) The court may extend the probation beyond the time allowed under subsection (b) of this section if:
> (1) The defendant consents in writing; and
> (2) the extension is only for making restitution.

Crim. Proc. § 6-222 (2003). This amendment permitted circuit courts to extend probation for five years without the defendant's consent, but "only for the purpose of making restitution." The amendment also permitted circuit courts to extend probation beyond those five years, but the defendant must consent to the extension, and it was permitted "only for making restitution."

The amendment was introduced by Delegate Luiz Simmons due to a large amount of restitution that remained unpaid after a probationer completed probation. Delegate Simmons wrote to Governor Ehrlich, seeking his support for the legislation and expressing dissatisfaction with the present system of compensating victims, specifically

noting "the system rewards the big crook" because "the more you steal the more likely you are to leave probation, before paying back a fraction of the money that was stolen." Letter from Delegate Luiz Simmons to Governor Ehrlich (Feb. 9, 2003) (included in the Committee files on H.B. 233). The bill would permit the courts to extend probation "for so long as it takes to repay restitution to the victims." *Id*. Despite Crim. Proc. § 6-222 already permitting the court to extend probation for five years, the Maryland Crime Victims' Resource Center ("the Center") advocated to remove the requirement that a defendant consent to the first extension of probation.[4] The Center explained "if a defendant fails to pay the full amount of restitution before his probationary period is complete, the remainder of the amount due and owing to the victim cannot be enforced as a violation of probation unless a defendant consents." Letter from Maryland Crime Victims' Resource Center to Chairman Joseph F. Vallario, Jr. (Feb. 10, 2003). Further, the Center argued that "[f]ew defendants, if any, would agree to be subject to incarceration for a longer period of time." *Id*. By removing the requirement that the defendant consent to the initial extension of probation, it would "return[] the power to the judicial system to ensure that previous court-ordered restitution is paid in full." *Id*. It is clear that the purpose of amending Crim. Proc. § 6-222 and adding subsection (c) was to ensure repayment of restitution by removing the requirement that a defendant must

---

[4] We do not rely upon statements made by an advocacy group as evidence of the intent of the Legislature, but point out these remarks merely to "map the rough contours of [the] legislation. Jack Schwartz & Amanda Stakem Conn, The Court of Appeals at the Cocktail Party: The Use and Misuse of Legislative History, 54 Md. Law Rev 432, 463 (1995). In any event, as we conclude later, we do not find the legislative history of the statute as particularly helpful.

consent to the first five year extension, and giving the courts authority to continue extending probation after those five years to allow the probationer to continue making restitution payments.

In 2005, the Legislature removed the limiting language "only" in Crim. Proc. § 6-222(b). The purpose for the amendment of § 6-222 was to "authoriz[e] a court to order probation for a defendant convicted of certain sexual abuse or sexual offense crimes involving a minor…" Title to Chapter 458, Laws of 2005. There were no substantive changes to subsection (b), solely grammatical clarifying changes necessitated by the new language being added to subsection (a). It is clear from the purpose of this amendment that the removal of the language "only" in subsection (b) was not intended to express a substantive change in the interpretation of the subsection. The circuit court was incorrect to think that the present absence of the word "only" in § 6-222(b) and its retention in § 6-222(c) weakens the force and singularity of the former. For purposes of the sometimes fictional world of legislative intent, the "only" from the original enactment is still there.[5] In sum, the legislative history is not especially informative on whether the phrase "for the purpose of making restitution" impliedly authorizes a court to impose conditions of probation.

---

[5] It is noteworthy that the title mentions nothing about restitution, because under Article III, § 29 of the Maryland Constitution, the title of the legislation must confine its operation or the measure must be invalidated to the extent of a conflict with the title. *States Atty. for Charles Cnty. v. Triplett*, 255 Md. 270, 282-83 (1969).

**Impact of Supervised Probation**

Crim. Proc. § 6-222(b)(2) provides that an extension of probation for purposes of restitution "may be unsupervised or supervised" by the Division of Parole and Probation. Does this mean that when a court orders "supervised" probation, it is free under the statute to set the standard conditions, such as those imposed on Maddox? We think not.

The supervision of probation is an administrative act. The imposition of a condition of probation is a judicial one. A parole and probation agent cannot impose conditions of probation. Rather, that employee's duty is to "use casework techniques to counsel, encourage and assist parole and probation clients in adopting socially acceptable behavior patterns for reintegration into the community." Department of Budget and Management (DBM), Job Specifications for Parole and Probation Agent II (Feb. 2, 2018). Thus, supervision is not intended as a backdoor way of authorizing judicially imposed conditions that are not encompassed within the "purpose of making restitution."

This does not mean that a probationer whose period of probation is extended for the purpose of restitution is free not to cooperate with his or her agent, to ignore a duty to check-in, or to fail to report on progress made toward making restitution. For such restitution-related misconduct, the agent can recommend graduated sanctions, Md. Code, Corr. Servs. § 6-121(b), which could include incarceration, involuntary detention for brief periods, noncustodial sanctions, § 6-121(c)(3), or even probation revocation, § 6-121(d).

**Consequences of Alternative Construction**

Although the legislative history provides no conclusive guidance, we find helpful the rule of statutory construction that when "seeking to ascertain legislative intent, [a court] may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Gomez v. Jackson Hewitt, Inc.*, 427 Md. 128, 158-59 (2012) (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75 (1986)).

Applying this test, we first examine the consequences of the State's interpretation of Crim. Proc. § 6-222(b). The State first contends that the statute does not limit the court's authority to impose standard conditions of probation. The State explains that the condition to obey all laws "could hardly be more imperative to achieving the underlying purpose of ensuring that a probationer actually satisfy his or her restitution obligation." Similarly, the State asserts that most of the standard probation conditions – "work regularly as directed and provide verification; get permission before changing address, jobs, or leaving the State of Maryland; do not illegally use any narcotic drugs or controlled substances; appear in court when notified to do so" – are "conducive to achieving the legislature's intent."

When the court imposes probation on a defendant, it has the discretion to impose both standard and special conditions that the defendant must follow, or risk penalties or further incarceration. Crim. Proc. § 6-222 was enacted because the General Assembly recognized that probationers may be incapable of completing restitution payments by the end of their initial term of probation and this statute would provide judicial oversight to

ensure repayment. While we understand the State's argument that imposing these conditions might be conducive to achieving the purpose of the repayment of restitution, on the other hand, these conditions might not be conducive. The statute simply does not provide the court unbridled authority to impose any condition that might be conducive to achieving the purpose of restitution.

The State makes much of Maddox's subsequent incarceration for unrelated crimes that ultimately caused the revocation of his probation in this case. Though Maddox was charged with numerous crimes, these charges were entirely unrelated to the present case and to the reason for his extended probation—to continue making restitution payments. The State contends that these "entanglements" were "counterproductive to the purpose for which his probation in this case was extended." Maddox presents a hypothetical scenario where a probationer is charged with a new crime, but is not imprisoned and continues to make restitution payments. In response to this hypothetical, the State argues that revoking probation is fact- and case-specific, and the supervising court has the authority to determine the appropriate sanction for violating probation. This argument misses the point.

There are many conditions that can be imposed on a probationer that could further the purpose of making restitution, however, as with Maddox's hypothetical, there are also endless scenarios where it is possible that a probationer violates that condition, but continues to make restitution payments. It is illogical and contrary to the text of the statute to revoke probation or sanction a probationer for violating a condition other than making restitution payments (or engaging in restitution-related misbehavior in a

supervised probation, see p. 14 *supra*) because the probationer is continuing to achieve the purpose of the extended probation – to make restitution payments. Further, it would be contrary to the text to rely on the court's discretion as to whether to sanction a defendant for the violation of a condition of probation other than failing to make or hindering the supervision of restitution payments.

The State's interpretation also creates the absurd possibility of an indeterminate term of probation. By imposing additional conditions on a probationer, creating numerous opportunities for a probationer to violate probation, the probationer could be trapped in a permanent probation period and facing a minefield of conditions.

The interpretation advanced by Maddox produces no such absurd results. Maddox contends that "a court may only impose restitution as a condition of an extended term of probation." Otherwise, Maddox explains, "a court could revoke probation for a reason unrelated to restitution even when the defendant is able to make restitution payments and even when imprisoning him or her would interfere with that ability." Further, Maddox argues "it makes sense that there be fewer potential obstacles to his or her ability to [make restitution payments]." We agree.

It would be illogical to argue that there were any other reasons to extend Maddox's probation, just as it would be unreasonable to argue that his probation should be revoked for any other reason than the failing to pay or hindering the supervision of restitution. If Maddox were capable of paying the entirety of his restitution by the end of his initial probation, he would not have been on probation at the time he was charged in these separate crimes. The only reason he was still on probation was to continue paying

restitution. Further, under the Justice Reinvestment Act, a court does not have the authority to revoke probation for the technical violation of failure to pay restitution.

In the context in which the Legislature intended that Crim. Proc. § 6-222(b) be applied, the court does not have the authority to impose any conditions of probation other than to make restitution payments and not to hinder supervision of those payments. This construction is both reasonable and logical and furthers the purpose of Crim. Proc. § 6-222(b) to allow the court to extend probation to ensure restitution is paid.

For these reasons, we reverse the denial of the Motion to Correct an Illegal Sentence. Because resentencing or a correction of the record of disposition may be in order and because the parties should be heard on what happens next, we remand for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY WICOMICO COUNTY.**